Filed 12/5/14; mod. order filed 12/5/14 depublishing opn; pub. & mod. order filed 12/30/14; both orders attached (see end of opn.)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| J.B.B. INVESTMENT PARTNERS, LTD. et al.,<br><br>        Plaintiffs and Respondents,<br><br>v.<br><br>R. THOMAS FAIR et al.,<br><br>        Defendants and Appellants. | A140232, A141228<br><br>(San Mateo County<br>Super. Ct. No. CIV522693) |

      R. Thomas Fair (Fair), Bronco RE Corporation (Bronco), BRE Boulevard LLC (Boulevard) and BRE Cameron Creek LLC (Cameron; collectively, defendants) appeal from a judgment following the trial court's grant of a motion pursuant to Code of Civil Procedure section 664.6 by J.B.B. Investment Partners, Ltd. (JBB) and Silvester Rabic (collectively, plaintiffs) to enforce a settlement between plaintiffs and defendants. The trial court found that Fair's printed name at the end of his e-mail where he had agreed to settlement terms set forth in an e-mail from plaintiffs' counsel was an "electronic signature" within the meaning of California's Uniform Electronic Transactions Act (Civ. Code, § 1633.1 et seq.)[1] (UETA) and what the trial court referred to as the "common law of contract" or "contract case law."

      Subsequently, plaintiffs requested attorney fees pursuant to a provision in an arbitration agreement between the parties. The trial court found plaintiffs to be the prevailing parties but denied the request for attorney fees because the matter never

---

[1] All further unspecified code sections refer to the Civil Code.

proceeded to arbitration and plaintiffs had failed to show that any contract authorized fees in the present litigation. Plaintiffs appeal from the order denying them attorney fees.

We granted plaintiffs' opposed request to consolidate the two appeals. In the first appeal Fair asks us to reverse the trial court's order enforcing the settlement pursuant to Code of Civil Procedure section 664.6 for two reasons: First, that the agreement sought to be enforced by plaintiffs was not signed by them and, second, that the trial court erred in determining that Fair's printed name at the end of his e-mail was enforceable under both UETA and, if not, by the law of contract. We decline to address the first claim because it was not raised below, the issue is not adequately analyzed by their briefs in this record, and the record is unclear as to the relevant facts. However, we agree with Fair's remaining claims regarding the ineffectuality of his printed name on the document sought to be enforced as a settlement, and shall therefore reverse the judgment in the first appeal.

Since plaintiffs are not the prevailing party, they are not entitled to attorney fees. Accordingly, we affirm the order denying plaintiffs' request for attorney fees that is challenged in the second appeal.

## BACKGROUND

Fair, an attorney and inactive member of the California State Bar, is the founder of Bronco, and Bronco is the managing member of Boulevard and Cameron. Boulevard and Cameron are Arizona limited liability companies formed in 2007, and they each own apartment units in Arizona.

Rabic is a non-attorney individual investor. JBB is a limited partnership based in Atherton, California, and Jonathan B. Buckheit is the general partner of JBB. In late 2007 and early 2008, JBB invested $150,000 and Rabic invested $100,000 in Boulevard and Cameron, and both became members of the limited liability companies.

Subsequently, plaintiffs asserted that they had discovered defendants had made various fraudulent representations and omissions; the parties attempted to negotiate a settlement of those disputes. One of plaintiffs' attorneys, Giacomo A. Russo, sent a settlement offer by e-mail on July 4, 2013 (the July 4 offer). The July 4 offer addressed

2

to Fair stated, among other things, that Fair "must represent and warrant (and provide full disclosure that) no monies moved illegally from one entity to another[,]" that he must enter a stipulated judgment for $350,000, and that "[a]ll litigation would be stayed pending the payments" made by Fair.

The last section in the July 4 offer provided, in relevant part: "The Settlement paperwork would be drafted in parallel with your full disclosure of all documents and all information as required by the first paragraph hereof; it is a material inducement to this settlement that you demonstrate that there is, IN FACT, not a Ponzi or Ponzi-like scheme at work here and the misrepresentations and non-disclosures of which [plaintiffs] have complained are, in fact, simply at most a negligent mistake on your part—as was the failure to get signatures on the ACTUAL FULL-LENGTH LLC Operating Agreements AND at that time, you disclosed that 'priority' really has NO MEANING in the context of the 'priority payments' which they were promised." This section concluded with the following final paragraph: "WE require a YES or NO on this proposal; you need to say 'I accept' . . . . Anything less shifts all focus to the litigation and to the Court Orders we will seek now as well as in the future as well as the subpoenas we will serve . . . . It is now up to you to decide whether you would rather resolve this amicably or not. Let me know your decision." The July 4 offer and e-mail did not have a signature line or signature block, and the e-mail sent to Fair did not include any signature by Rabic and Buckheit.

Rabic and Buckheit both declared that they authorized Russo to make a final settlement offer to defendants and that they signed the July 4 offer on July 5, 2013. Fair declared that he did not receive the July 4 offer with the signatures of Rabic and Buckheit until August 6, 2013.

At 10:17 a.m., on July 5, Fair sent the following e-mail to Russo from his cell phone: "[Russo], the facts will not in any way support the theory in your e-mail. I believe in Cameron. So I agree. Tom [F]air[.]" Russo and another attorney for plaintiffs, Ansel J. Halliburton, responded that they did not understand Fair's e-mail and could not determine whether he was accepting or rejecting the settlement offer. Halliburton stated,

3

"Please be unambiguous, because I am about to file the complaint and ex parte papers unless we hear an unambiguous acceptance."

Plaintiffs filed their lawsuit against defendants just before noon on July 5, 2013. Counsel for plaintiffs sent an e-mail at 12:25 p.m. to Fair, which attached the filed complaint and copies of an ex parte application for, among other things, expedited discovery.

At 1:02 p.m., on July 5, Fair sent Halliburton the following message from his cell phone: "I said I agree. Took wording right from [Russo's] e-mail. I agree[.]" At 1:04 p.m., Fair left the following voicemail message for Halliburton: "Hey Ansel, I just got your e-mail and your—and your voicemail. I was playing golf on a course that doesn't allow cell phones. So anyway, I thought I was quite clear on my first response, I made another response by e-mail, I said I agree with [plaintiffs' counsel's] terms. You know? So, that's it."

Shortly thereafter, at 1:07 p.m., Fair sent a message from his cell phone to Halliburton and stated: "I do not believe you gave proper notice. Also I agreed with your terms. You should mot [*sic*] have filed. We clearly have an agreement. [T]om [F]air[.]" At 1:36 p.m., Fair sent by his cell phone the following message to Russo: "Filing does not obviate agreement/acceptance. Pls acknowledge[.]"

Russo responded to Fair at 1:53 p.m. with the following e-mail: "This confirms full agreement; I will work on the formal settlement paperwork which will conform to the settlement agreement made today based on the 10 numbered paragraphs below with no admission of liability or wrongdoing by anyone. I will seek to get that settlement paperwork to you for review by Monday with the goal of getting it all finalized and signed next week. The settlement is otherwise binding under [Code of Civil Procedure section] 664.6 . . . ."

Two minutes later, at 1:55 p.m., Fair sent the following text message to Halliburton: "I have accepted by phone and [e-mail]. Stop proceeding. I said accept which is same as 'agreed.' You must stop and you must tell the court we have an

4

agreement." Fair also left a voice message for Russo at some unknown time on July 5, 2013.

On July 11, 2103, Halliburton sent to Fair a draft of the final settlement (July 11 writing). This writing specified the names of plaintiffs and defendants and stated that the agreement was between them. It advised that the agreement could be "signed and delivered by facsimile" and that it could be "electronically signed" by each party. It also included signature blocks for each party.

On July 16, Halliburton sent an e-mail to Fair stating that he had not heard from Fair. In a separate e-mail, he indicated that he would get [Rabic's] signature once he received Fair's signature and a check for the initial payment. A few days later, on July 18, Fair responded that he expected to have comments for Halliburton by the following day and that his attorney had been out of town but was returning that day.

Fair sent an e-mail to Halliburton on July 19, and stated that he had spoken to his accounting firm and the firm suggested a call or a meeting to discuss "the unfounded suspicions and allegations of your clients." Halliburton, responding by e-mail on that same day, said, in relevant part: "It's a good thing we have a settlement, then; let's put pen to paper and close it." "We are not going to stay anything until we have a signed deal."

Fair did not sign the July 11 writing.

On August 6, 2013, plaintiffs filed a motion pursuant to Code of Civil Procedure section 664.6 to enforce the settlement. In support of the motion, plaintiffs submitted the various e-mail, voicemail, and text communications between Fair and their attorneys on July 5, 2013. They also submitted the videotaped deposition of Fair. At his deposition, Fair acknowledged that he deliberately typed his name when his name appeared at the end of an e-mail message and that his phone or software did not automatically place his name there. When asked whether he thought he had an agreement when he sent his e-mail on July 5, 2013, Fair replied: "I thought I had agreed to terms that were suggested in an e-mail during the morning, which had become moot, but I didn't know it until I reviewed all of this stuff later. I didn't read that long e-mail of the morning until maybe a

5

couple of days later." When asked why he believed the agreement had become moot, he answered: "Because they did file, and I changed my mind."

In opposition to the motion, Fair filed, among other things, his declaration. He maintained that Russo's statements that he would contact other investors or go to newspapers to disclose "frivolous allegations" against defendants had made him fearful in July 2013. Additionally, he had not slept during the first week of July 2013 because he had to check repeatedly on his ailing mother. He noted that he was not represented by counsel when he sent the messages to plaintiffs and their counsel and his messages "were sent under severe duress, in particular because [p]laintiffs' counsel was barraging me with phone calls and e-mails, and demanding the names of the other investors in the [limited liability companies]—threatening to contact the other members of the [limited liability companies]." He insisted that his e-mail messages on July 5, 2013, simply signified his good faith and desire to work out a settlement. He asserted that there was no meeting of the minds and that he had not read more than the first paragraph of the July 5 offer. He declared that he did not consider his name on the e-mail to be a signature to a settlement agreement. He maintained that he did not sign important legal documents, such as settlement agreements, without the assistance of counsel.

The superior court held a hearing on plaintiffs' motion to enforce the settlement under Code of Civil Procedure section 664.6 on October 18, 2013.[2] At its commencement the court advised counsel that it "had some real problems with Mr. Fair's declaration as far as credibility, I'll tell you that at the start," and the court felt entitled to take "the comparative credibility of the witnesses" into account. Indicating credibility was not the question, counsel for Fair answered that the central issue was whether there was an electronic signature that satisfied the requirements of UETA. Fair's printed name did not satisfy UETA, counsel insisted, because the July 7 offer did not authorize an electronic signature, nor did any other communication between the parties prior to the

---

[2] The court also heard defendants' motion to compel arbitration. The court denied this motion on the basis of waiver.

6

draft final settlement Halliburton sent Fair on July 11, which did state that it could be "electronically signed." Counsel for the plaintiffs agreed that whether Fair's printed name complied with UETA was the chief issue but maintained that it clearly complied, resting on the provision of UETA which states that "[i]f a law requires a signature, an electronic record satisfies the law." (§ 1633.7, subd. (d).)

As will be seen, although the court wondered how plaintiff's counsel can "be here asking me under [Code of Civil Procedure section] 664.6 to enforce a settlement that you didn't yourself think was binding" when counsel sent Fair a draft final settlement on July 11, the court adopted plaintiffs' contention.

It is clear from the court's explanation of its granting of plaintiffs' motion to enforce the settlement that it conceived the chief issue to be whether there was a meeting of the minds as to the terms of the settlement, which is a factual question. As the court stated, "I think that the preponderance of the evidence that's in front of me here is that there was an agreement struck on July 5th. It may not have been reduced to the more formal writing signed by both sides, but I think that there was more likely than not Mr. Fair's agreement that the matter had been settled according to what the e-mails and the voice mails said. [¶] The reason why I'm not stating that in more detail is that would have to go into things that are under seal, under the sealing order, but I think that is the case. And so that makes a commercial sense in my view because we have sophisticated parties on both sides."

The trial court continued: "You have at that point in time the equivalent of a situation of yesteryear that would have been not electronic where a lot of deals were done on backs of envelopes and maybe at that point down the road the parties would get lawyers to draft a more formal agreement. But there is older case law that recognizes that a preliminary scribbling like that, if it entailed out all of the materials [*sic*], it was good enough for a contract to warrant to be in place [*sic*]."

The trial court concluded that there was a settlement and that Fair was not under duress but "knew exactly what he was doing." The court emphasized that "[t]here is no coercion or duress here." The court said it was following the federal case law and finding

7

that the e-mail coupled with the corroborating voicemail qualified as an "electronic signature" under UETA. The court added that, even if it should not follow the guidance of the federal case law, it found "that the communications that went back and forth electronically are tantamount to today's modern version of telegrams that used to go back and forth in the commercial world and follow the old cases." The court certified its ruling for interlocutory appeal under Code of Civil Procedure section 166.1.

On November 1, 2013, the trial court filed its judgment granting plaintiffs' motion to enforce the settlement. The court found that plaintiffs proved by a preponderance of the evidence that Fair, on behalf of all defendants, "did more likely than not agree to a settlement with counsel for [p]laintiffs by e-mail on July 5, 2013, confirmed by later e-mails and voicemails." The court found that the e-mails "include electronic signatures within the meaning of" UETA and "[p]laintiffs provided sufficient evidence that Mr. Fair deliberately typed his name at the end of those e-mails. Those e-mails were further corroborated with later e-mails and voice mails, as reflected in the record." The court added, "even without resort to the UETA and instead under contract common law, Mr. Fair's July 5 communications constitute acceptances of [p]laintiffs' offer to settle. The court follows the reasoning set out in *Lamle v. Mattel* [(Fed. Cir. 2005) 394 F.3d 1355 (*Lamle*)], as well as prior California cases finding typed names on telegrams sufficient to form a contract. . . ." The court concluded: "As stated on the record, the court is of the opinion that there are 'substantial grounds for difference of opinion' regarding the court's resolution of this motion" and "there is no California case law to guide the court's opinion, and the appellate court should look into this matter." The court retained jurisdiction to enforce the judgment.

On November 7, 2013, the trial court entered final judgment in favor of plaintiffs and ordered defendants to pay plaintiffs $362,810.96. Defendants filed a timely notice of appeal.

On December 11, 2013, plaintiffs moved for costs and attorney fees under section 1717 and the attorney fees clause in the arbitration agreement. The trial court found that no contract authorized fees in the present litigation and denied plaintiffs' request for

8

attorney fees; it awarded plaintiffs costs in the amount of $4,567.54. Plaintiffs filed a timely notice of appeal from this order.

On June 6, 2014, plaintiffs filed in this court a motion to consolidate defendants' appeal of the judgment and plaintiffs' appeal of the denial of attorney fees. Defendants opposed the motion. We granted plaintiffs' motion to consolidate. Plaintiffs also filed a motion to dismiss defendants' appeal and a request for judicial notice based on their argument that Fair had violated various court orders in superior courts. We denied the motion to dismiss and the request for judicial notice.

## DISCUSSION

## I.

### *Defendants' Appeal*

**A. *Standard of Review***

"Although a judge hearing a [Code of Civil Procedure] section 664.6 motion may receive evidence, determine disputed facts, and enter the terms of a settlement agreement as a judgment [citations], nothing in section 664.6 authorizes a judge to create the material terms of a settlement, as opposed to deciding what terms the parties themselves have previously agreed upon." (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 810, italics omitted.)

"The trial court's factual findings on a motion to enforce a settlement pursuant to [Code of Civil Procedure] section 664.6 'are subject to limited appellate review and will not be disturbed if supported by substantial evidence.' " (*Osumi v. Sutton* (2007) 151 Cal.App.4th 1355, 1360.) "Consistent with the venerable substantial evidence standard of review, and with our policy favoring settlements, we resolve all evidentiary conflicts and draw all reasonable inferences to support the trial court's finding that these parties entered into an enforceable settlement agreement and its order enforcing that agreement." (*Ibid*.)

In this case, as we have said, the trial court focused primarily on whether the parties had a meeting of the minds regarding settlement, which is a factual question. Accordingly, the court's determination that there was such a meeting of the minds is

9

subject to limited review and will not be disturbed if supported by substantial evidence. (*Williams v. Saunders* (1997) 55 Cal.App.4th 1158, 1162)  However, whether the granting of plaintiffs' motion satisfied the strict requirements of Code of Civil Procedure section 664.6, including the requirement that all parties sign the agreement, and whether Fair's printed name constituted an "electronic signature" within the meaning of UETA or under the law of contract, are legal issues, so that we conduct an independent or de novo review of those most crucial determinations.

**B.** ***The Trial Court Failed to Inquire Whether, as Required by Code of Civil Procedure Section 664.6, all Plaintiffs Signed the Settlement Agreement, but Fair Waived the Issue by Failing to  Raise it in the Trial Court***

As material, Code of Civil Procedure section 664.6 provides:  "If parties to pending litigation stipulate, in a writing *signed by the parties* outside the presence of the court . . . for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement."  "Because of its summary nature, strict compliance with the requirements of [Code of Civil Procedure] section 664.6 is prerequisite to invoking the power of the court to impose a settlement agreement." (*Sully-Miller Contracting Co. v. Gledson/Cashman Construction, Inc.* (2002) 103 Cal.App.4th 30, 37 (*Sully-Miller*).)  Settlement of a lawsuit implicates a substantial right of the litigants; therefore, the Supreme Court has concluded that "parties" in Code of Civil Procedure section 664.6 means the litigants personally and does not include their attorneys of record (*Levy v. Superior Court* (1995) 10 Cal.4th 578, 584, 586), even if the parties expressly authorized the agent to enter into a settlement on their behalf (see *Gauss v. GAF Corp.* (2002) 103 Cal.App.4th 1110, 1162-1164).  "The litigants' direct participation tends to ensure that the settlement is the result of their mature reflection and deliberate assent." (*Levy,* at p. 585.)  Thus, the statute "require[s] the signatures of the parties seeking to enforce the agreement under [Code of Civil Procedure] section 664.6 and against whom the agreement is sought to be enforced." (*Harris v. Rudin, Richman & Appel* (1999) 74 Cal.App.4th 299, 305.)

10

In *Levy v. Superior Court, supra,* 10 Cal.4th 578, the Supreme Court made clear that an agreement to settle cannot be enforced under Code of Civil Procedure section 664.6 unless it is signed by *all* of the litigating parties. (*Levy,* at p. 586; accord, *Sully-Miller, supra,* 103 Cal.App.4th at p. 37 ["A written settlement agreement is not enforceable under [Code of Civil Procedure] section 664.6 unless it is signed by all of the parties to the agreement, not merely the parties against whom the agreement is sought to be enforced."]; *Harris v. Rudin, Richman & Appel, supra,* 74 Cal.App.4th at p. 305 ["We read the statute's requirement of a writing 'signed by the parties' to require the signature of the parties seeking to enforce the agreement under [Code of Civil Procedure] section 664.6 and against whom the agreement is sought to be enforced"].)

Astonishingly, the trial court never inquired on the record whether all of the parties signed the agreement plaintiffs sought to enforce, let alone make the express finding that all parties signed that agreement, as required by the case law interpreting Code of Civil Procedure section 664.6 just cited, and Fair never raised the issue until now. Furthermore, the record is not entirely clear regarding the facts,[3] and the briefs of

---

**3** The record on appeal contains documents filed under seal in the superior court. These documents include separate declarations of Buckheit and Rabic in which each states that he signed the July 4 offer on July 5, 2013, and that the attached exhibit is the signed offer. The exhibit attached to Rabic's declaration includes the July 4 offer and has his signature at the end of the offer, next to Russo's printed name. The exhibit attached to Buckheit's declaration has the July 4 offer and e-mail messages from both Fair and Russo, but Buckheit's signature is not on the July 4 offer or on Russo's e-mail.

On August 6, 2014, we issued an order directing plaintiffs' counsel to submit to this court the July 4 offer that Buckheit signed on July 5, 2013, if this document was, in fact, part of the record in the trial court. Our order stated that "[t]he document submitted to this court must have a file-stamp or otherwise establish that it was part of the record in the trial court."

In response to our order, Christopher Sargent, one of the attorneys for plaintiffs, submitted a declaration of Buckheit dated August 5, 2013, in which he states that he "signed a copy of Mr. Russo's settlement offer, which I am informed and believe that Mr. Fair accepted on July 5" and attaches a copy of that document to the declaration. The last page of the document contains a large bolded box in which is stated "Agreed to and accepted on July 5, 2013" followed by the signature of Jonathan B. Buckheit. The exhibit to the declaration of Buckheit provided us by attorney Sargent—which is not

the parties in this court do not adequately address the issues. For those reasons, and also because our ruling on Fair's other claim renders the issue moot, we decline to address his claim that the agreement sought to be enforced under Code of Civil Procedure section 664.6 was not signed by all of the parties.

## C. *Fair's Printed Signature Was Not An "Electronic Signature" Within the Meaning of UETA*

At the hearing on the motion pursuant to Code of Civil Procedure section 664.6, counsel for the parties both stated that, in their view, the dispositive issue was whether Fair's printed signature on the e-mail responding to Russo's July 4 e-mail constituted an "electronic signature" within the meaning of UETA. According to counsel for Fair, Civil Code section 1633.7 is "really the meat of all of the issues that we are going to get to today, whether there was a signature or not, and I think that that is driving everything." Section 1633.7 provides that "(a) A record or signature may not be denied legal effect of enforceability solely because it is in electronic form. [¶] (b) A contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation. [¶] (c) If a law requires a record to be in writing, an electronic record satisfies the law. [¶] (d) *If a law requires a signature, an electronic signature satisfies the law*." (Italics added.)

Counsel's argument that Fair's printed name was not an "electronic signature" within the meaning of the statute consisted of three points: First, that in subsequent e-mails to Fair, Russo, and Halliburton repeatedly indicated that there can be no genuine settlement until a formal agreement had been drafted "signed and delivered by facsimile" and thereafter "electronically signed." As Halliburton stated in one of his subsequent e-mails, " 'Once we have your signature [on a final agreement] we will have the other plaintiff come in for his signature and we can be done.' " Counsel maintained, in other

---

Bates Stamped—is identical to the declaration of Buckheit and exhibit thereto in the record on appeal provided by the San Mateo Superior Court, except for two things: The declaration and exhibits in the record provided by the superior court are all Bates stamped and, as noted earlier, the exhibit is not signed by Buckheit. In other words, it is not clear whether the exhibit containing Buckheit's signature was presented to the trial court.

12

words, that there was no meeting of the minds as to a final agreement at the time Fair printed his name on the e-mail offer. Second, counsel argued the July 4 settlement offer indicated that, if the parties agreed, "there will be no litigation; everything would be stayed, " so that, even if there was a settlement agreement, by filing the complaint on July 5 the plaintiffs either withdrew or breached it. Finally, counsel pointed out that, at the time Fair printed his name on the July 4 e-mail, none of the correspondence between the parties authorized the use of an electronic signature, such as that later included in the July 11 writing.

Counsel for plaintiffs agreed that section 1633.7 was controlling, but maintained that it definitively established that Fair's printed name was an "electronic signature" within the meaning of the UETA. Given the simplicity of the pertinent provision—"If the law requires a signature, an electronic signature satisfies the law" (§ 1633.7, subd. (d).)—counsel for plaintiffs felt there was no need to consult the case law or any other legal authority.

After the court pointed out that by proffering the July 11 draft settlement his clients did not act as if they had an executed final settlement after Fair printed his name on the July 4 offer, the court asked plaintiffs' counsel "how can you be here asking me under [Code of Civil Procedure] 664.6 to enforce the settlement that you didn't yourself think was binding." Counsel answered that plaintiffs "are not seeking to enforce that July 11th document; we are seeking to enforce the July 5th agreement which has ten clear, precise numbered paragraphs; that's what we are seeking to enforce. We are seeking to enforce against all of the defendants because doing anything else wouldn't make any sense," and "Mr. Fair controls all of those defendants. So when he says, 'I agree; I accept' he is speaking for all of them, clearly by context."

The trial court adopted plaintiffs' view. Finding that, a preponderance of the evidence showed that an agreement was struck on July 5th, the court reasoned that it was "more likely than not Mr. Fair's agreement that the matter had been settled according to what the e-mails and the voicemails said." Referring to section 1633.7, the court also

13

found that "the e-mails in this case coupled with the corroborating voice mail can qualify as an electronic signature under the statute."

The views of counsel to the contrary notwithstanding, section 1633.7 is not the provision of UETA most applicable to the motion before the court, and the court's determination that Fair's printed name was an enforceable "electronic signature" was manifestly erroneous.

Under UETA (§ 1633.1 et seq.), which became effective January 1, 2000, an electronic record satisfies the requirement that a record be in writing (§ 1633.7, subd. (c)), and an electronic signature satisfies the requirement that the writing be signed (§ 1633.7, subd. (d)). "An electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner . . . ." (§ 1633.9, subd. (a); see also *Ni v. Slocum* (2011) 196 Cal.App.4th 1636, 1647 ["the Legislature has, through these provisions, expressed general approval of the use of electronic signatures in commercial and governmental transactions"].)

Section 1633.2, subdivision (h) defines an " '[e]lectronic signature' " as "an electronic sound, symbol, or process attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the electronic record." UETA applies, however, only when the parties consent to conduct the transaction by electronic means. (§ 1633.5, subd. (b).) "Whether the parties agree to conduct a transaction by electronic means is determined from the context and surrounding circumstances, including the parties' conduct. . . ." (*Ibid.*) "A party that agrees to conduct a transaction by electronic means may refuse to conduct other transactions by electronic means. . . ." (§ 1633.5, subd. (c).)

Nothing in the record indicates counsel or the court were aware of any of the provisions of UETA just cited, other than section 1633.7, or appreciated the complexity of the statutory scheme. Focusing only on section 1633.7, the court appears to have simplistically assumed, as did counsel for plaintiffs, that because Fair admitted at deposition that the signature was his, and the signature was indisputably electronic, the

14

printed signature on the July 4 offer was therefore an "electronic signature" within the meaning of UETA.

We agree that a printed name or some other symbol might, under specific circumstances, be a signature under UETA and might satisfy the even more rigorous requirements under Code of Civil Procedure section 664.6. Courts in other jurisdictions that have adopted a version of UETA have concluded that names typed at the end of e-mails *can* be electronic signatures. (See, e.g., *Preston Law Firm, L.L.C. v. Mariner Health Care Mgmt. Co.* (5th Cir. 2010) 622 F.3d 384, 391 [affirming that "[e]mails can qualify as the signed writings needed to form contracts" under Louisiana's UETA]; *Cloud Corp. v. Hasbro, Inc.* (7th Cir. 2002) 314 F.3d 289, 295-296 [holding that "the sender's name on an e-mail satisfies the signature requirement of the [Illinois] statute of frauds" and noting that it would be a valid signature under the federal Electronic Signatures in Global and National Commerce Act as well]; see also *Lamle, supra,* 394 F.3d at p. 1362 [e-mail was written prior to the enactment of California's UETA but court opined that inclusion of individual's name on e-mail would be valid signature under California's UETA]; *Gillis v. Wells Fargo Bank* (E.D. Mich. 2012) 875 F.Supp.2d 728, 734-735 [signed letter and e-mail messages that included the sender's salutation were sufficient to satisfy statute of frauds].)

The trial court's analysis was incomplete. Attributing the name on an e-mail to a particular person and determining that the printed name is "[t]he act of [this] person" is a necessary prerequisite but is insufficient, by itself, to establish that it is an "electronic signature." (§ 1633.9, subd. (a).) As counsel and the court seemed unaware, UETA defines the term "electronic signature." Subdivision (h) of section 1633.2 states that " '[e]lectronic signature' means an electronic sound, symbol, or process attached to or logically associated with an electronic record and *executed or adopted by a person with the intent to sign the electronic record*." (Italics added. See also Cal. Civ. Jury Inst. No. 380 [party suing to enforce an agreement formalized by electronic means must prove "based on the context and surrounding circumstances, including the conduct of the parties, that the parties agreed to use [e.g., e-mail) to formalize their agreement"].)

15

We have independently reviewed the record and conclude, as a matter of law, that it does not show that Fair printed his name at the end of his e-mail with any intent to formalize an electronic transaction. Indeed, substantial evidence in the record refutes such a finding.

"Whether the parties agree to conduct a transaction by electronic means is determined from the context and surrounding circumstances, including the parties' conduct. . . ." (§ 1633.5, subd. (b).) The absence of an explicit agreement to conduct the transaction by electronic means is not determinative; however, it is a relevant factor to consider.

Plaintiffs argue that the July 4 offer expressly contemplated acceptance by electronic means as it specified that Fair needed to say, "I accept." They also cite Fair's testimony that he personally typed his name and that he refused to sign the July 11 writing because he had simply changed his mind. Plaintiffs' evidence is legally insufficient.

The exchange of e-mail messages shows that the parties clearly agreed to negotiate the terms of the settlement by e-mail, but plaintiffs did not demonstrate, as they must (§ 1633.5, subd. (b)), that the parties ever agreed to conduct transactions by electronic means or that Fair intended with his printed name at the end of his e-mail to sign electronically the July 4 offer. The July 4 offer did not contain any statement indicating that the parties agreed to enter into a final settlement by electronic means. The plain language of the July 4 offer made it clear that no signature was being requested as the offer included no signature line or signature block, contained no signature by any of the plaintiffs, and advised that future paperwork was forthcoming. The last section in the July 4 offer provided that "[t]he Settlement paperwork would be drafted . . . ." Additionally, this section advised that plaintiffs require "a YES or NO on this proposal; you need to say 'I accept[.]' " (Italics added.) The last sentence in this section stated: "Let me know your decision." None of these sentences in the July 4 offer supports a conclusion that the parties agreed that Fair's agreement to the proposal was an agreement to sign a legally binding settlement. (See *Sully-Miller, supra,* 103 Cal.App.4th at p. 37 [a

16

party's signature added "to a document that does not call for it" is not a signed writing under Code of Civil Procedure section 664.6 because "[a] party's signature fails to convey" knowledge and express consent "unless it is contained in a document that was clearly intended by that party to be a binding settlement agreement"]; *Powell v. City of Newton* (2010) 364 N.C. 562 [703 S.E.2d 723, 727-728] [applying North Carolina's UETA and concluding that the parties did not agree to the use of electronic signatures "[i]n light of the express indication by [one party] that [the other party] should sign and forward the [agreements]"].) Moreover, Fair's subsequent voicemail and text messages from his cell phone did not indicate that he intended for his e-mail to be a signature to the electronic record as he simply stated that he "agree[d] with" or accepted Russo's terms.

Subsequently, the statements of plaintiffs' counsel provided further evidence that no party considered the July 4 offer attached to the July 5 e-mail as a final document requiring a signature. Russo stated that Fair's response "confirms full agreement" and he promised to work "on the formal settlement paperwork" and "get the settlement paperwork" for Fair's review "with the goal of getting it all finalized and signed next week." He added that the "settlement is otherwise binding under" Code of Civil Procedure section 664.6, but the settlement could not be binding without all of the parties' signatures. Halliburton sent Fair an e-mail on July 19, 2013, stating in relevant part: "It's a good thing we have a settlement, then; let's put pen to paper and close it." "We are not going to stay anything until we have a signed deal."

In contrast to the July 4 offer, the July 11 writing included a signature line at the end of the settlement agreement. Additionally, it specified that an electronic signature could be used. The July 11 writing provided: "This Settlement Agreement may be signed and delivered by facsimile and in counter-parts. It may also be electronically signed by each of the Parties through the use of EchoSign, DocuSign, or such other commercially available electronic signature software which results in confirmed signatures delivered electronically to each of the Parties, which shall be treated as an original as though in-signed by officers or other duly authorized representatives of each Party." No similar language was in the July 4 offer and, as already stressed, the July 4

17

offer did not indicate that a printed name at the bottom of an e-mail would be an electronic signature.

Accordingly, we conclude that the evidence in the record is as a matter of law insufficient to establish that Fair signed electronically a settlement agreement. Since Fair's printed name was not a signature under UETA, the trial court erred when it concluded that Fair's printed name at the bottom of the e-mail satisfied the strict signature requirements under Code of Civil Procedure section 664.6.[4]

**D.** ***Fair's Printed Name on the E-Mail Was not a Signature Under the Law of Contract***

The trial court provided an independent basis for concluding that Fair signed a settlement agreement that was enforceable under Code of Civil Procedure section 664.6. The court ruled that Fair's July 5 communications constituted an acceptance under what

---

[4] In his declaration, Fair stated that he never received the July 4 offer with the signatures of Rabic and Buckheit until August 6, 2013. We need not consider whether plaintiffs' signatures, which were on documents without signature lines and not sent to Fair until August 6, 2013, satisfied the signature requirements of Code of Civil Procedure section 664.6. (See *Sully-Miller, supra,* 103 Cal.App.4th at p. 37 [documents by defendant's counsel that only called for plaintiffs' signature and had defendant's belated and undated signature at the end of the documents was not enforceable under Code of Civil Procedure section 664.6 because "[t]he purpose of [Code of Civil Procedure] section 664.6's signed writing requirement—to provide unequivocal proof of the parties' intent to enter a binding settlement—would be frustrated if courts enforced written agreement pursuant to that section where, as here, the agreement only contemplates the signature of one party"].)

Additionally, we need not consider Fair's other arguments that the July 4 offer did not contain all of the material terms; litigation was not pending when Fair first responded to the July 4 e-mail; the July 4 offer was rescinded when plaintiffs filed their lawsuit since a material term of the offer was that all litigation would be stayed; Fair was under duress when he responded to plaintiffs' counsel; Code of Civil Procedure section 664.6 must be satisfied with a single writing, not with multiple communications; plaintiffs were estopped from claiming an agreement was reached; and, even if Fair's printed e-mail was a signature, the agreement was not enforceable under Code of Civil Procedure section 664.6 because none of the other defendants signed the agreement.

We also express no opinion as to whether plaintiffs can enforce the July 4 offer by another method, such as a motion for summary judgment for breach of contract.

it referred to as "contract common law." The court elaborated: "[The settlement] may not have been reduced to the more formal writing signed by both sides, but I think that there was more likely than not Mr. Fair's agreement that the matter had been settled according to what the e-mails and the voice mails said." The court cited *Lamle, supra,* 394 F.3d 1355, "as well as prior California cases finding typed names on telegrams sufficient to form a contract. . . ."

Under Code of Civil Procedure section 664.6, the trial court had to find that all of the parties signed the settlement agreement. It was error to enforce the settlement agreement under this summary procedure upon a finding that it "was more likely than not" Fair had agreed to settle.

Furthermore, a typed name at the end of an e-mail is not, by itself, a signature under case law. Courts have held that typed names appearing on the end of telegrams or names typewritten are, in certain circumstances, sufficient to be a signature to satisfy the California statute of frauds. (*Lamle, supra,* 394 F.3d 1355; see also, *Brewer v. Horst & Lachmund Co.* (1900) 127 Cal. 643; *McNear v. Petroleum Export Corp.* (1929) 208 Cal. 162; *Marks v. Walter G. McCarty Corp.* (1949) 33 Cal.2d 814.) But none of these cases involved Code of Civil Procedure section 664.6, and thus far no court has held that a printed name satisfies the strict signature requirements of this statute.[5]

---

[5] Plaintiffs cite to a New York decision, *Forcelli v. Gelco Corp.* (2013) 972 N.Y.S.2d 570 [109 A.D.3d 244], which held that an e-mail message from an automobile insurer's claims adjuster, confirming an oral settlement between the insurer and plaintiff, was a binding written settlement agreement and enforceable under New York's statute. New York's statute permits enforcement of a stipulated agreement that is in writing but, unlike California's statute, the party's attorney may sign the agreement. (*Id.* at p. 248.) In *Forcelli,* the court explained that the face-to-face mediation at which settlement was attempted and the subsequent follow-up telephone calls between the parties supported the conclusion that there *was an intent to subscribe the e-mail.* (*Id.* at p. 251.) The court held "that where, as here, an email message contains all material terms of a settlement and a manifestation of mutual accord, and the party to be charged, or his or her agent, types his or her name under circumstances manifesting an intent that the name be treated as a signature, such an email message may be deemed a subscribed writing within the meaning" of the New York statute "so as to constitute an enforceable agreement." (*Ibid.*)

Even if a printed name can satisfy the signature requirements of Code of Civil Procedure section 664.6, a printed name is not a signature under contract law simply because the person deliberately printed his or her name. "[I]t is a universal requirement that the statute of frauds is not satisfied unless it is proved that the name relied upon as a signature was placed on the document or adopted by the party to be charged *with the intention of authenticating the writing*." (*Marks v. Walter G. McCarty Corp., supra,* 33 Cal.3d at p. 820, italics added.) The evidence must also demonstrate that the person printing his or her name intended to execute the document. Here, as already discussed, the record is devoid of any evidence demonstrating that Fair intended to execute a settlement agreement by electronic means when he printed his name at the end of his e-mail.

---

Obviously, a New York case is not binding on our interpretation of California contract law or the requirements for a signature under California's Code of Civil Procedure section 664.6. *Forcelli v. Gelco Corp., supra,* 109 A.D.3d 244 is also not persuasive because it is clearly distinguishable from the present case. The court in *Forcelli* stressed the following: The e-mail message "set forth the material terms of the agreement, to wit, the acceptance by the plaintiffs' counsel of an offer of $230,000 to settle the case in exchange for a release in favor of the defendants, and contained an expression of mutual assent. Significantly, the settlement was not conditioned on any further occurrence, such as the outcome of the motion for summary judgment or the formal execution of the release and stipulation of dismissal by these defendants and related entities [citation]." (*Id.* at p. 248.) In contrast, here, Fair's printed name was not at the bottom of the actual proposed agreement; Fair's e-mail was in response to the electronic offer. Furthermore, unlike the situation in *Forcelli,* the July 4 offer was conditioned on the formal writing of the agreement. Finally, and most significantly, as discussed fully below, the record in *Forcelli* showed an intent to subscribe the e-mail; the record before us does not demonstrate that Fair intended to subscribe the e-mail.

20

## II.

### *Plaintiffs' Appeal*

Plaintiffs appeal the trial court's denial of their request for attorney fees. The trial court found that plaintiffs were the prevailing party but "the contract upon which they rely as authorization for an award of fees only authorizes an award of attorney's fees to the party prevailing in arbitration. Plaintiffs have not shown the existence of any contractual provision authorizing the award of attorney's fees incurred in litigation."

Code of Civil Procedure section 1021 provides: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided." Plaintiffs maintain that the arbitration agreement provided for attorney fees to the prevailing party and that they are entitled to fees under this agreement[6] and section 1717.

On appeal from an attorney fees order under section 1717, the trial court has wide discretion in determining which party has prevailed and we will not disturb that determination unless "a manifest abuse of discretion, a prejudicial error of law, or necessary findings not supported by substantial evidence" is demonstrated. (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 577.) If the court's ruling is correct on *any* legal theory, the judgment will be affirmed. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 980-981.)

We need not address plaintiffs' argument that they are entitled to attorney fees under the arbitration agreement and section 1717. As discussed above, we are reversing the trial court's order granting plaintiffs' request to enforce the settlement pursuant to Code of Civil Procedure section 664.6 and vacating the judgment in favor of plaintiffs. Thus, plaintiffs are not the prevailing party, as is required for attorney fees under both

---

**6** The arbitration agreement reads: "The Member initiating the arbitration shall pay the costs, deposits and expenses of such arbitration and the prevailing party shall be awarded its attorneys' fees and expenses, in addition to all other relief awarded by the arbitrators . . . ."

21

section 1717 and the arbitration agreement.  Consequently, we conclude that the trial court's order denying plaintiffs' request for attorney fees is correct.

## DISPOSITION

The order enforcing the settlement pursuant to Code of Civil Procedure section 664.6 is reversed and the judgment is vacated.  We affirm the order denying plaintiffs' attorney fees.  Defendants are awarded costs in both appeals.


_____
Kline, P.J.


We concur:


_____
Richman, J.


_____
Stewart, J.

Trial Court:                         San Mateo County Superior Court

Trial Judge:                         Hon. Gerald J. Buchwald

Attorneys for Appellants:            The Baldwin Law Group
                                     Patrick Baldwin
                                     Christopher Paul Mader

Attorneys for Respondents:           ComputerLaw Group LLP
                                     Giacomo A. Russo
                                     Ansel Jay Halliburton

Filed 12/5/14; order modifying published opinion filed 12/5/14

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| J.B.B. INVESTMENT PARTNERS, LTD. et al., | A140232, A141228 |
| Plaintiffs and Respondents, | (San Mateo County Super. Ct. No. CIV522693) |
| v. | |
| R. THOMAS FAIR et al., | **ORDER MODIFYING OPINION** |
| Defendants and Appellants. | **NO CHANGE IN JUDGMENT** |

**BY THE COURT:**

The opinion in the above-entitled matter filed on December 5, 2014, was certified for publication in the Official Reports.  Since this court's December 5, 2014 opinion does not meet the standard for publication as set forth in rule 8.1105(c) of the California Rules of Court, it is hereby ordered that the opinion should not be published in the Official Reports.  There is no change in judgment.

Dated:_____          _____P.J.

1

Filed 12/30/14

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| J.B.B. INVESTMENT PARTNERS, LTD. et al.,<br><br>      Plaintiffs and Respondents,<br><br>v.<br><br>R. THOMAS FAIR et al.,<br><br>      Defendants and Appellants. | A140232, A141228<br><br>(San Mateo County<br>Super. Ct. No. CIV522693)<br><br>**ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PUBLICATION**<br>**NO CHANGE IN JUDGMENT** |


**THE COURT:**

The opinion in the above-entitled matter filed on December 5, 2014, was not certified for publication in the Official Reports. After the court's review of request under California Rules of Court, rule 8.1120, and good cause established under rule 8.1105, it is hereby ordered that the opinion should be published in the Official Reports.

It is ordered that the opinion be modified as follows:

1. On page 2, replace the last two sentences of the first full paragraph with the following:

Fair's first claim was not raised in the trial court and the relevant facts are unclear. However, we need not address this issue because our ruling on Fair's second claim is dispositive: Fair's printed name on the document sought to be enforced as a settlement, was not a signature. We shall therefore reverse the judgment in the first appeal.

2. On page 10, replace the heading with the following:

**B.** ***It is Unclear from this Record whether all the Plaintiffs Signed the Settlement Agreement***

1

3.  On page 12, at the top of the page, the first full sentence is replaced with the following:

However, we need not decide whether all of the plaintiffs signed the settlement agreement because, as we explain *post,* at pages 12 through 20*,* the record is clear that one of the parties, Fair, never signed the agreement as required by Code of Civil Procedure section 664.6.

There is no change in judgment.

Dated:_____        _____P.J.

Trial Court:                     San Mateo County Superior Court

Trial Judge:                     Hon. Gerald J. Buchwald

Attorneys for Appellants:        The Baldwin Law Group
                                 Patrick Baldwin
                                 Christopher Paul Mader

Attorneys for Respondents:       ComputerLaw Group LLP
                                 Giacomo A. Russo
                                 Ansel Jay Halliburton
                                 Christopher Sargent