Filed 3/28/24

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| BTHHM BERKELEY, LLC, et al., Plaintiffs and Respondents, v. STEWART JOHNSTON, Defendant, Cross-complainant and Appellant; HOLDA NOVELO et al., Cross-defendants and Respondents. | A166242 (Alameda County Super. Ct. No. RG17862130) |

Stewart Johnston appeals from the trial court's order in favor of BTHHM Berkeley, LLC, PNG Berkeley, LLC, Michail Family 2004 Living Trust, Bianca Blesching, Scot Hawkins (collectively, BTHHM), and Holda Novelo and Landmark Real Estate Management, Inc. (collectively, Landmark), enforcing a settlement term sheet and entering judgment against him pursuant to Code of Civil Procedure section 664.6 (section 664.6). Johnston argues that the term sheet was not an enforceable settlement agreement because it omits material terms. Even if it is enforceable, he argues, a provision in the term sheet requiring him to pay $250,000 in

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I, II and III.

1

liquidated damages for late payment is unlawful, and the trial court's award of prejudgment interest on the settlement amount was unauthorized.

We reverse the trial court's award of prejudgment interest but otherwise affirm.

## BACKGROUND

Landmark and the predecessors of BTHHM entered into a letter of intent to lease real property owned by Johnston. Landmark was Johnston's property manager. According to the letter of intent and its amendments, BTHHM would pay rent to Johnston to hold the property vacant while BTHHM applied to the City of Berkeley for a permit to operate a cannabis dispensary. The letter of intent provided that, once the city granted the permit, Johnston would turn the property over to BTHHM to operate the dispensary. In return, BTHHM would pay Johnston double the rent required to hold the property vacant. Johnston held the property vacant for 20 months during which time BTHHM paid, and Johnston accepted, rent according to the provisions of the letter of intent and its amendments. But when the city approved the permit, Johnston refused to deliver possession of the property to BTHHM.

BTHHM sued Johnston, asserting breach of contract and related claims, and seeking "at least" $1,545,000 in damages. Johnston filed a cross-complaint against Landmark, alleging that it lacked authority to bind him to the contract with BTHHM, and that Landmark knew Johnston would never agree to lease his real property to a cannabis dispensary.

In October 2021, the parties attended an all-day tele-mediation, the product of which was a two-page term sheet titled "Settlement Term Sheet Agreement," which provided, in relevant part:

2

"[The parties] enter into this Settlement Term Sheet ("Agreement") as of October 27, 2021 and agree as follows. . . .

"1. **Dismissal of Entire Action with Prejudice**: Defendant will dismiss his Cross-Complaint with prejudice upon Cross-Defendant's payment of its share of the settlement amount. Plaintiffs will dismiss their Complaint with prejudice upon full payment of the settlement amount of $2,200,000 to Plaintiffs.

"2. **Settlement Payment**: . . . .

a. **Settlement Payment by Defendant**: Defendant shall pay Plaintiffs the total amount of $1,600,000 as follows:

   i.    $200,000 within (30) days of this agreement;

   ii.   $700,000 by January 15, 2022 at 5:00 p.m. Pacific time; and

   iii.  $700,000 by April 15, 2022 at 5:00 p.m. Pacific time.

b. **Settlement Payment by Cross-Defendant**: Cross-Defendant shall pay Plaintiffs the total amount of $600,000 within thirty (30) days of receipt . . . of a completed W-9. . . .

"3. **Stipulation for Entry of Judgment/Liquidated Damages**: Defendant shall execute and deliver to Plaintiffs a Stipulation of Entry of Judgment in favor of Plaintiffs and against Defendant. If Defendant fails to make any of the payments referenced in Paragraph 2(a) above, then . . . Plaintiffs shall have the right to immediately file the Stipulation for Entry of Judgment in the Action in the amount of the unpaid balance owed by Defendant plus $250,000, and have Judgment entered in accordance therewith.

3

"4. **Code of Civil Procedure § 664.6**:  Parties agree the Agreement is admissible and enforceable in court pursuant to CCP § 664.6.  The parties agree that this is a good faith settlement between adverse parties. . . .

[¶] . . . [¶]

"6. **Plaintiffs' Release of Claims To Property**: Plaintiffs agree to release any and all rights under the subject Letter of Intent and its amendments, including their right of first refusal on the property [at issue], upon Defendant's full payment of $1,600,000.

"7. **Mutual Releases**:  All Parties shall fully release each other from all claims he/she/it had or may have against each other, except as to any continuing obligations under this Agreement. . . .

[¶] . . . [¶]

"11. **Further Documentation**:  Parties agree to execute a final settlement agreement, which includes a mutually agreeable form for the Stipulation for Entry of Judgment.

"12. **Judge Warren's Availability**:  Judge Warren is available to further assist the parties as necessary. . . ."

 All parties signed the term sheet.

In the ensuing days, the parties discussed execution of the settlement, including drafting a formal settlement agreement pursuant to paragraph 11. During these discussions, Johnston's attorney informed the other parties that Johnston wished to withdraw his agreement to the settlement.  Johnston later explained that he "was exhausted, confused, and feeling ill" at the end of the day of mediation, and that when his attorneys presented him with the term sheet, he signed it without understanding the meaning of the reference to section 664.6 or that it was intended as a final settlement.  The day after

4

the mediation, Johnston stated, he instructed his attorney "to immediately rescind and cancel whatever [he] signed," and roughly a month later Johnston's attorney confirmed that Johnston would not sign the formal settlement agreement.

BTHHM and Landmark moved to enforce the term sheet pursuant to section 664.6. The court granted the motions, finding that the term sheet was an enforceable agreement within the meaning of section 664.6, that its terms were clear and definite, and that Johnston's "self-serving" declaration was not credible insofar as he attested that he did not understand the term sheet was meant to be a binding agreement.

Johnston did not pay BTHHM or dismiss his cross-complaint against Landmark as required by the enforcement orders. Landmark did, however, pay BTHHM $600,000.

BTHHM filed a motion for entry of judgment, which Landmark joined. Along with enforcement of the term sheet, BTHHM requested prejudgment interest on the amounts owed by Johnston. Johnston opposed the motion and filed an ex parte application as well as supplemental briefing and supplemental declarations, but did not in his filings oppose the request for prejudgment interest. After hearing, the court granted the motion, awarded prejudgment interest to BTHHM, entered judgment against Johnston, and dismissed his cross-complaint with prejudice.

## DISCUSSION

### I.    Standard of Review

" 'The trial court's factual findings on a motion to enforce a settlement pursuant to . . . section 664.6 "are subject to limited appellate review and will not be disturbed if supported by substantial evidence." ' [Citation.] 'Consistent with the venerable substantial evidence standard of review, and

5

with our policy favoring settlements, we resolve all evidentiary conflicts and draw all reasonable inferences to support the trial court's finding that these parties entered into an enforceable settlement agreement and its order enforcing that agreement.' " (*J.B.B. Investment Partners, Ltd. v. Fair* (2014) 232 Cal.App.4th 974, 984.)

## II.     Enforceability of the Term Sheet

Section 664.6 provides that "[i]f parties to pending litigation stipulate, in a writing signed by the parties . . . for settlement of the case . . . the court, upon motion, may enter judgment pursuant to the terms of the settlement." (§ 664.6, subd. (a).)  Just as with any other contract, whether a settlement entered pursuant to section 664.6 is binding and enforceable depends on the parties' intent, as manifested by the objective language of the writing.  (Civ. Code §§ 1636, 1638, 1639; *J.B.B. Investment Partners Ltd. v. Fair* (2019) 37 Cal.App.5th 1, 11–12 & fn. 8 (*J.B.B. II*).)

As the trial court noted, the term sheet expressly states that the parties agree that it "is admissible and enforceable in court pursuant to [section 664.6]" and "is a good faith settlement between adverse parties."  The trial court found, and we agree, that the term sheet is not ambiguous or indefinite, and objectively reflects a mutual intent to be bound by its terms. We similarly defer to the trial court's finding that Johnston's self-serving statements that he did not intend to be bound by the term sheet were not credible.  Substantial evidence supports the trial court's finding that the term sheet's language evinces the parties' mutual agreement to settle the case according to its terms.

Johnston argues that the term sheet was not a final, enforceable agreement because it omitted material terms and contemplated future negotiations.  First, he argues, the parties agreed in paragraph 11 to reduce

6

the terms of the agreement to a final, formal document with mutual releases. Second, paragraph 3 required Johnston to execute a separate stipulation for entry of judgment that BTHHM could file in the event of a default. Third, paragraph 12 states that the mediator would be available to assist as necessary, implying that the parties perceived the term sheet as incomplete. These arguments are not persuasive.

That the parties intended to incorporate the terms of their agreement into a formal, final settlement document does not negate the parties' intent that the term sheet itself would bind them. (*J.B.B. II*, 37 Cal.App.5th at pp. 11–12 & fn. 8 [plain, objective language evidencing mutual consent to be bound to preliminary agreement, notwithstanding acknowledgment that a more formal agreement would be drafted, established mutual consent to be bound as a matter of law]; *Pappas v. Chang* (2022) 75 Cal.App.5th 975, 986, 988 [term in preliminary settlement agreement providing that parties would draft a "more comprehensive settlement agreement" with "a provision for mutual confidentiality" did not render preliminary agreement unenforceable].) The same is true with respect to the parties' agreement that Johnston would execute a separate stipulation for entry of judgment; nothing in the term sheet indicates that the parties agreed to be bound by its terms only if Johnston executed the stipulation. (Cf. *Elyaoudayan v. Hoffman* (2003) 104 Cal.App.4th 1421, 1430 ["where the [agreement] shows it was not intended to be binding until a [separate writing] is executed, there is no contract"]; *Beck v. American Health Group Internat., Inc.* (1989) 211 Cal.App.3d 1555, 1562–1563, superseded by statute on other grounds as recognized in *Epic Medical Management, LLC v. Paquette* (2015) 244 Cal.App.4th 504, 516, fn. 6 [no binding contract where writing expressly stated the parties would agree on a contract in the future].) On the contrary,

7

the term sheet states that the parties agreed to be bound, including that Johnston agreed to prepare a separate stipulation for entry of judgment. Johnston has not shown that the parties' agreement to prepare separate documents reflects a failure to agree on the material terms of the settlement.

Johnston asserts that the lack of mutual releases in the term sheet shows that the agreement is missing material terms and therefore is not enforceable. This argument overlooks that both paragraphs 6 and 7 of the term sheet are explicit release provisions. Paragraph 7, in particular, broadly requires "All Parties" to "fully release each other from all claims he/she/it had or may have against each other, except as to any continuing obligations under this Agreement . . . ." And paragraph 1 requires Johnston and BTHHM to dismiss their complaints with prejudice upon performance of the agreement. Johnston does not specify what additional releases are necessary but states that the term sheet lacks "specific language on the terms of the release" and implies that paragraph 11 requires the drafting of some other form of mutual release. But paragraphs 1, 6, and 7 are not vague or indefinite. They specify that the parties will dismiss their respective complaints with prejudice; BTHHM will release any claims it has to the subject real property; and that otherwise the parties "fully release each other from all claims . . . against each other, except as to any continuing obligations" set forth in the term sheet. And paragraph 11 says nothing about mutual releases.

We similarly do not find persuasive Johnston's argument that the parties' ability, as necessary, to consult further with the mediator negated their express intent to be bound by the term sheet. It would be entirely reasonable for the parties to seek the assistance of the mediator to flesh out—without materially altering—the terms of their agreement in the anticipated

8

formal writing; to further negotiate non-material details of the agreement; to assist them in resolving any disputes regarding performance; or to address other minor issues. That they contemplated doing so only reinforces that they agreed to be bound, while acknowledging that the term sheet was not a formal, long-form agreement.

## III. The Liquidated Damages Clause

Paragraph 3 of the term sheet authorizes the award of $250,000 to plaintiffs as liquidated damages if Johnston fails to make the scheduled payments. Civil Code section 1671, subdivision (b) governs the validity of liquidated damages provisions in a contract. It provides that a liquidated damages provision "is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." (Civ. Code § 1671, subd. (b).) "Whether a liquidated damages provision is invalid under [Civil Code] section 1671 is generally a question of law subject to de novo review, ' "but the factual foundation for appellate review consists of (1) the facts that are not in dispute and (2) the facts that are established by viewing the conflicting evidence in the light most favorable to the trial court's judgment." ' " (*Gormley v. Gonzalez* (2022) 84 Cal.App.5th 72, 82 (*Gormley*).)

" ' "A liquidated damages clause will generally be considered unreasonable, and hence unenforceable under [Civil Code] section 1671[, subdivision] (b), if it bears no reasonable relationship to the range of actual damages that the parties could have anticipated would flow from a breach." ' " (*Gormley*, *supra*, 84 Cal.App.5th at p. 83.) Although older cases have stated that "damages for failing to pay money are ' "easily determinable" ' and are limited to ' "interest at [the] prevailing rate[]" ' and (perhaps) 'reasonable costs [incurred] in pursuing the payment' " (*ibid*.), this

9

former rule applied specifically to consumer contracts. In analyzing liquidated damages provisions in non-consumer contracts, like the one here, additional factors are relevant, such as the parties' relative bargaining power, whether they had legal representation, and whether the settlement was the result of " 'significant negotiations' " rather than being a form contract. (*Id.* at p. 85.)

Here, as in *Gormley*, the parties were represented by counsel and had relatively equal bargaining power. The settlement was not a form contract, but rather the result of significant negotiations, including prior settlement conferences. In addition, the liquidated damages amount of $250,000 was not unreasonably out of proportion to the $2.2 million settlement. (See *Gormley*, *supra*, 84 Cal.App.5th at p. 87.) The trial court also concluded that Johnston failed to meet his burden to show $250,000 was an unreasonable amount in the circumstances, a determination to which we defer.

## IV. Prejudgment Interest

Johnston argues that the trial court lacked authority to award BTHHM prejudgment interest on the settlement amounts because the parties never so agreed. BTHHM responds that Johnston failed to oppose its request for prejudgment interest before the trial court, and that even if the issue were not forfeited, the court had authority to award prejudgment interest pursuant to Civil Code section 3287 once the right to recover damages had vested and the damages amount was certain. (Civ. Code § 3287, subd. (a).)

Johnston did not challenge the award of prejudgment interest until oral argument on the motion for entry of judgment. At that point, he challenged only the amount of prejudgment interest, not the court's authority to award such interest. Although we agree that Johnston likely forfeited his challenge

to the award, we nevertheless address the issue because it implicates the trial court's jurisdiction. (*People v. Lara* (2010) 48 Cal.4th 216, 225.)

Section 664.6 authorizes the trial court to enter a judgment reflecting the terms of the parties' settlement agreement—nothing more, and nothing less. " ' Although a judge hearing a section 664.6 motion may receive evidence, determine disputed facts and enter the terms of a settlement agreement as a judgment [citations], nothing in section 664.6 authorizes a judge to *create* the material terms of a settlement, as opposed to deciding what terms *the parties themselves* have previously agreed upon.' " (*Osumi v. Sutton* (2007) 151 Cal.App.4th 1355, 1360.)

Prejudgment interest is not a cost, but an element of damages. (*North Oakland Medical Clinic v. Rogers* (1998) 65 Cal.App.4th 824, 830.) Here, the parties reached an agreement about what amount of money would adequately compensate BTHHM for the harm it suffered to warrant BTHHM's release of claims. That agreement included a liquidated damages provision that would become operative if Johnston failed to make timely payment. By awarding prejudgment interest to compensate BTHMM for damages it suffered by virtue of Johnston's failure to pay, the court entered a judgment that differed materially from the terms of the parties' agreement, and to that extent it was unauthorized. (See *Jones v. World Life Research Institute* (1976) 60 Cal.App.3d 836, 839–840, 848; *Greentree Financial Group, Inc. v. Execute Sports, Inc.* (2008) 163 Cal.App.4th 495, 502 [reversing award of prejudgment interest not provided for in section 664.6 agreement].) We disagree that Civil Code section 3287 authorizes an award of prejudgment interest on a judgment entered pursuant to section 664.6 where, as here, the parties have reached their own agreement about what compensation is owed for damages that would otherwise be addressed by an award of prejudgment interest.

11

The parties disagree as to whether the award of prejudgment interest may be severed from the judgment, leaving the remainder intact.  We conclude that the portion of the judgment providing for prejudgment interest may be stricken without otherwise invalidating the judgment.  (*Jones v. World Life Research Institute*, *supra*, 60 Cal.App.3d at p. 848.)

## DISPOSITION

The judgment is reversed in part and affirmed in part.  The matter is remanded to the trial court with directions to reduce the judgment against Johnston by $55,671.52, the total value of the prejudgment interest awarded to BTHHM.  The parties shall bear their respective costs on appeal.

GOLDMAN, J.

WE CONCUR:

BROWN, P. J.
STREETER, J.

| | |
|---|---|
| Trial Court: | Alameda County Superior Court |
| Trial Judge: | Honorable Patrick R. McKinney |
| Counsel for Defendant, Cross-complainant and Appellant Stewart Johnston: | Stephen F. Lopez |
| Counsel for Plaintiffs and Respondents BTHHM Berkeley, LLC, PNB Berkeley, LLC, Michael Family 2004 Living Trust, Bianca Blesching, and Scot Hawkins: | ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS, Marissa M. Dennis |
| Counsel for Cross-defendants and Respondents Holda M. Novelo and Landmark Real Estate Management: | HINSHAW & CULBERTSON, Gary E. Devlin |