Filed 3/23/21 Bravo v. Charter Communications CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
### SECOND APPELLATE DISTRICT
### DIVISION FOUR

| | |
|---|---|
| BRAVO et. al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> CHARTER COMMUNICATIONS, LLC et. al., <br><br> Defendants and Appellants. | B303179 <br><br> Los Angeles County Super. Ct. No. 19STCV28846 |

APPEAL from an order of the Superior Court of Los Angeles County, Gregory Wilson Alarcon, Judge. Reversed and remanded with directions.

Hill, Farrer & Burrill, James A. Bowles and Erika A. Silverman, for Defendants and Appellants.

Guerra & Casillas, Ruben Guerra and Tizoc Perez-Casillas for Plaintiffs and Respondents.

## INTRODUCTION

Charter Communications, LLC (Charter), Noe Florin, Debone Markham, and Cheryl Doe (collectively, "Employers") challenge the trial court's order denying their motion to compel arbitration of employment-related claims asserted against them by former Charter employees Claudia Bravo, Rhonda Lackey, Khaliah Farwell, Crystal Glass, Michael Washington, Angelica Gomez, and Tamekia Newman (collectively, "Employees"). The trial court determined no valid arbitration agreements existed between the parties, having found: (1) the Employees did not assent to their enrollment into Charter's arbitration program; and (2) the purported arbitration agreements failed for lack of consideration. On appeal, the Employers contend both findings were error. We agree and reverse.

## BACKGROUND

Charter provides cable television, telephone, and internet services to customers throughout the United States. As of October 6, 2017, the Employees were employed by Charter as telephone service representatives. Glass was on medical leave at the time. She returned to work on November 20, 2017.

On October 6, 2017, Paul Marchland, Charter's Executive Vice President of Human Resources, sent an e-mail to all active Charter employees' work e-mail addresses announcing the company's establishment of an "employment-based legal dispute resolution program" called "Solution Channel." The e-mail described Solution Channel as a "program that allows [the recipient] and the company to efficiently resolve covered employment-related legal disputes through binding arbitration." The e-mail also stated: "By participating in Solution Channel,

2

you and Charter both waive the right to initiate or participate in court litigation (including class, collective and representative actions) involving a covered claim and/or the right to a jury trial involving any such claim. More detailed information about Solution Channel is located on Panorama. Unless you opt out of participating in Solution Channel within the next 30 days, you will be enrolled. Instructions for opting out of Solution Channel are also located on Panorama." (Italics omitted.) Marchland's e-mail contained a link to a webpage located on Panorama, Charter's "intranet site accessible to [its] [e]mployees," which provided more information about Solution Channel ("Solution Channel Webpage").

The Solution Channel Webpage provided additional information about the program's purpose, the "tangible benefits" employees would enjoy by participating in the program, and how employees could submit a claim to invoke the dispute-resolution process. The Solution Channel Webpage also stated the following: "Participation in Solution Channel means that you and Charter agree to waive any right to participate in court litigation involving covered disputes and to arbitrate those disputes that are not successfully resolved following the internal review phase of the process." Employees could access Solution Channel's Program Guidelines and the Mutual Arbitration Agreement setting forth the program's terms via links on the Solution Channel Webpage.

The Solution Channel Webpage also told employees how to opt-out of the program, stating: "**Opting Out of Solution Channel.** [¶] If you do not opt out of Solution Channel within the designated time, you will automatically be enrolled in Solution Channel and considered to have consented to the terms of the

3

Mutual Arbitration Agreement at that time. To opt-out of Solution Channel, please **click here**. In the new window that will open, click Main Menu -> Self-Service -> Solution Channel." Employees who clicked on the link embedded in the passage above and followed the specified steps were directed to the webpage where they could opt out of Solution Channel. ("Opt Out Webpage").

Upon landing on the Opt Out Webpage, employees could check a box next to the following phrase: "I want to opt out of Solution Channel[.]"After doing so, employees could enter their name into an adjacent text field and click "SAVE." Those who completed these steps received an e-mail confirming they had opted out of Solution Channel.

Employees who were on a leave of absence on October 6, 2017, such as Glass, were sent an e-mail informing them of Charter's implementation of Solution Channel 10 days after they returned from leave. This e-mail described Solution Channel as "an arbitration program that allows you to efficiently resolve employment-related legal disputes by submitting a written claim for internal review and, if necessary, to binding arbitration, where claims can be heard by a neutral arbitrator that you and Charter select." The e-mail informed returning employees they could access Solution Channel's Program Guidelines and the Mutual Arbitration Agreement governing the program's terms on Panorama, and contained a link to the Solution Channel Webpage.[1] The e-mail further stated: "You will be automatically

---

1      The record is unclear whether, like the version of the Solution Channel Webpage accessible to employees who were active when Marchland initially announced Charter's adoption of Solution Channel, the version of the Solution Channel Webpage

enrolled in Solution Channel unless you choose to opt out of the program within the next 30 days. You can learn more about opting out of Solution Channel by <u>clicking here</u>. By agreeing to arbitrate disputes under this Program, you and Charter are giving up any right to a jury trial and any right to bring covered claims in a court of law. You should review the Mutual Arbitration Agreement and Program Guidelines carefully." (Bolding omitted.) Those who clicked on the link embedded in the passage above were directed to a webpage where they were asked to "sign[ ] in using their regular network credentials." From there, the employee could access the Opt Out Webpage.

None of the Employees opted out of Solution Channel during the 30-day timeframe provided. Consequently, the Employees were enrolled in Solution Channel the day after their opt-out period expired.

On August 16, 2019, the Employees filed a complaint against the Employers, asserting nine claims for relief based upon the Employers' alleged violations of the Fair Employment and Housing Act and the California Family Rights Act during the course of their employment.

In response, on October 2, 2019, the Employers filed a motion to compel arbitration and stay the action pursuant to the Federal Arbitration Act (FAA). The Employees opposed the motion, arguing the Employers failed to demonstrate the existence of valid arbitration agreements between the parties because: (1) the purported arbitration agreements were invalid

---

available to employees returning from leave also contained a link to the Opt Out Webpage and/or reiterated they would be automatically enrolled in Solution Channel if they did not opt out in the time provided.

under California's Uniform Electronic Transactions Act (UETA), as the Employees did not consent to transact by electronic means as required by statute; and (2) the Employers could not demonstrate the Employees received or reviewed the e-mails notifying them of their enrollment in Solution Channel, and therefore could not prove they received notice of Charter's incorporation of an agreement to arbitrate into the terms of their employment contracts.

The trial court denied the Employers' motion to compel on November 27, 2019. In issuing its ruling, the court first noted the parties did not dispute the FAA's applicability, and therefore found that the FAA governs.[2]

Subsequently, the trial court rejected both of the arguments raised in the Employees' opposition. First, regarding the Employees' UETA argument, the trial court determined the statute and the case on which the Employees relied, *J.B.B. Investment Partners, Ltd. v. Fair* (2014) 232 Cal.App.4th 974 (*J.B.B.*), were inapposite.

With respect to the Employees' second argument, the trial court found the Employers' evidence was insufficient to demonstrate the Employees clicked on and read the e-mails announcing Charter's implementation of Solution Channel. Ultimately, however, the trial court found the Employees "did in fact receive the emails," and that "[w]hether [they] chose to read the emails or not is not of importance in finding whether an implied-in-fact agreement to arbitrate exists." Nevertheless, the

2 The trial court also found, for purposes of the Employers' motion, the arbitration agreements were not unconscionable, as the parties did not appear to dispute the matter.

court determined "no valid agreement to arbitrate exists," because "acceptance of the arbitration agreement was voluntary." Specifically, the court emphasized the Employees "could continue to be employed without agreeing to the arbitration agreement," and therefore found "an absence of acceptance and consideration."

Charter timely appealed.

## DISCUSSION

### I.    General Principles and Standard of Review

Pursuant to section 2 of the FAA, an agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) "This statute stands as a 'congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.' [Citation.]" (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 235 (*Pinnacle*), fn. omitted.) "Nonetheless, it is a cardinal principle that arbitration under the FAA 'is a matter of consent, not coercion.' [Citation.] Thus, "'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."' [Citations.]" (*Id.* at p. 236.)

Accordingly, "'[w]hen considering a motion to compel arbitration, the court must initially "determine whether the parties agreed to arbitrate the dispute in question." [Citation.] "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that

arbitration agreement." [Citation.]' [Citations.]" (*Bruni v. Didion* (2008) 160 Cal.App.4th 1272, 1283.)

"In determining the rights of parties to enforce an arbitration agreement within the FAA's scope, courts apply state contract law while giving due regard to the federal policy favoring arbitration. [Citations.] [¶] In California, '[g]eneral principles of contract law determine whether the parties have entered a binding agreement to arbitrate.' [Citations.]" (*Pinnacle, supra*, 55 Cal.4th at p. 236.)

"There is no uniform standard of review for evaluating an order denying a motion to compel arbitration. [Citation.] If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed. [Citations.]" (*Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425.)

## II.    Analysis[3]

The Employers contend the trial court erred by finding: (1) the Employees did not impliedly assent to their enrollment into Solution Channel by continuing to work for Charter and failing to opt out of the program after receiving notice of its establishment; and (2) the agreements to arbitrate were unsupported by consideration. In response, the Employees largely rely on the same arguments they raised before the trial court. Specifically,

---

3    The Employers' Request for Judicial Notice in Support of their Reply Brief, filed on December 21, 2020 and corrected as of that date, is granted. (See Evid. Code, §§ 452, subd. (a); 459, subd. (a).)

8

they: (1) maintain the arbitration agreements were invalid because the UETA's requirements had not been satisfied; (2) continue to "deny ever having received or reviewed the e-mail[s]" informing them that they would be enrolled in Solution Channel; and (3) assert the trial court correctly found that they "failed to provide the adequate consideration in that their acceptance was voluntary."

As discussed below, we agree with the Employers, and conclude the Employees' arguments are unavailing.

## A.    Applicability of UETA

The Employees "maintain that the UETA applies" in this case because "the purported arbitration agreement was an electronic transaction." Accordingly, relying on *J.B.B.*, *supra*, 232 Cal.App.4th 974, the Employees contend the agreements were invalid because the Employees did not "consent to transact electronically [with Charter] prior to the electronic transaction," as required by the statute. We disagree.

The UETA concerns "electronic records and electronic signatures relating to a transaction." (Civ. Code, § 1633.3, subd. (a).) Under the UETA, "[i]f a law requires a record to be in writing, an electronic record satisfies the law[,]" and "[i]f a law requires a signature, an electronic signature satisfies the law." (§ 1633.7, subds. (c) & (d).) The UETA further provides that "[a] record or signature may not be denied legal effect or enforceability solely because it is in electronic form[,]" and "[a] contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation." (§ 1633.7 subds. (a) & (b).) The UETA, however, "applies only to a

transaction between parties each of which has agreed to conduct the transaction by electronic means." (§ 1633.5, subd. (b).)

In *J.B.B.*, the Court of Appeal held the parties' written settlement agreement failed to satisfy the "strict signature requirements" of Code of Civil Procedure section 664.6,[4] and therefore was not enforceable under that statute. (*J.B.B.*, *supra*, 232 Cal.App.4th at pp. 990-993.) In support of its holding, the Court of Appeal emphasized that "an agreement to settle cannot be enforced under [the statute] unless it is signed by *all* of the litigating parties. [Citations.]" (*Id.* at p. 985.) The Court of Appeal then determined the trial court erred by finding the plaintiff's printed name on the bottom of an e-mail expressing agreement to the proposed settlement was a valid signature under the UETA for purposes of satisfying this requirement, because the record did not "demonstrate . . . that the parties ever agreed to conduct transactions by electronic means [as required by Civil Code section 1633.5, subdivision (b)], or that [the plaintiff] intended with his printed name at the end of his e-mail to sign electronically . . . the [settlement] offer." (*Id.* at p. 989)

As the trial court aptly observed, this case does not involve the enforceability of a settlement agreement under Code of Civil Procedure section 664.6. Nor does it require us to evaluate the validity of an electronic signature, or whether an electronic record satisfies any law requiring a written instrument. Rather,

---

4      Code of Civil Procedure section 664.6, subdivision (a) provides, in pertinent part: "If parties to pending litigation stipulate, in a writing signed by the parties outside of the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement."

we must address: (1) whether the Employees' conduct manifested implied assent to their participation in Charter's arbitration program; and (2) whether their agreements to arbitrate were supported by consideration. Accordingly, we agree with the trial court that the UETA and *J.B.B.* do not apply.

## B.    Implied Assent

As noted above, "[g]eneral principles of contract law determine whether the parties have entered a binding agreement to arbitrate. [Citation.]" (*Craig v. Brown & Root* (2000) 84 Cal.App.4th 416, 420 (*Craig*).) "Under California's law of contracts, a contract may be express (that is, either written or oral) or implied in fact (that is, one whose 'existence and terms . . . are manifested by conduct'). [Citations.]" (*Douglass v. Serenivision, Inc.* (2018) 20 Cal.App.5th 376, 387.) Thus, "parties may enter into an implied in fact agreement to arbitrate through their conduct . . . . [Citation.]" (*Ibid.*) "Whether a party's conduct constitutes consent is necessarily fact specific[.]" (*Id.* at p. 388.)

"[I]t is settled that an employer may unilaterally alter the terms of an employment agreement, provided such alteration does not run afoul of the Labor Code[,]" or any other statute or contractual agreement. (*Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 619-620 (*Schachter*).) "An 'employee who continues in the employ of the employer after the employer has given notice of changed terms or conditions of employment has accepted the changed terms and conditions.' [Citation.]" (*Id.* at p. 620.) Accordingly, an employee's continued employment may constitute implied-in-fact acceptance of an arbitration agreement proposed by his or her employer as a new term or condition of employment.

11

(See *Harris v. TAP Worldwide, LLC* (2016) 248 Cal.App.4th 373, 383-384 (*Harris*); see also *Craig, supra,* 84 Cal.App.4th at p. 420.)

The Employees contend they could not have impliedly accepted Charter's proposed arbitration agreement because they were not given prior notice of its intention to incorporate the agreement into the terms of their employment. Specifically, they argue that they did not receive the e-mails informing them they would be enrolled in Solution Channel unless they opted out within the 30-day period provided. In so doing, the Employees essentially challenge the trial court's factual finding that they "did in fact receive the e-mails." We review this finding for substantial evidence. (See *Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 63-65 (*Avery*) [reviewing trial court's finding regarding employee's receipt of employee handbook containing arbitration agreement for substantial evidence].)

"Under the substantial evidence standard of review, 'we must consider all of the evidence in the light most favorable to the [trial court's findings], giving [it] the benefit of every reasonable inference, and resolving conflicts in support of the [findings]. [Citations.] [¶] It is not our task to weigh conflicts and disputes in the evidence; that is the province of the trier of fact. Our authority begins and ends with a determination as to whether, on the entire record, there is *any* substantial evidence, contradicted or uncontradicted, in support of the [findings at issue]. . . . [Citations.]' [Citation.]" (*ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1266 (*ASP Properties*).)

The Employers submitted the following evidence: (1) declarations by John Fries, Charter's Vice President of HR Technology, in which he states each of the Employees, except

Glass, was on the distribution list for the e-mail sent by Marchland on October 6, 2017 regarding Charter's implementation of Solution Channel; (2) copies of the e-mails Marchland sent to each of those Employees, which showed their names in the recipient field; and (3) a declaration by Fries, in which he stated Glass was on the list of employees who were sent the e-mail regarding Charter's adoption of Solution Channel following their return from leave, and that he confirmed the e-mail was sent on December 2, 2017. On this record, the trial court could reasonably infer the Employees received the e-mails above. Thus, the trial court could appropriately conclude the Employees were given notice of Charter's implementation of Solution Channel, their ability to opt-out of the program if they so desired within 30 days, and the consequences of their failure to do so.[5]

To the extent the Employees suggest evidence of the e-mails being sent cannot constitute evidence of their receipt because Evidence Code section 641 is inapplicable to e-mail, we are not persuaded. Pursuant to that statute: "A letter correctly addressed and properly mailed is presumed to have been received

_____

5    As noted above, although the trial court found the Employees received the e-mails, it determined the Employers' evidence was insufficient to support a finding that they had clicked on or opened the e-mails. The Employers did not contend this finding was error in their opening brief. Instead, they present the argument for the first time in their reply brief via footnote. It is well-settled, however, that "'[p]oints raised for the first time in a reply brief will ordinarily not be considered, because such consideration would deprive the respondent of an opportunity to counter the argument.' [Citation.]" (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.)

13

in the ordinary course of mail." (Evid. Code, § 641.) As an initial matter, we note the Employees did not cite, and we could not find, any California appellate court decisions holding this presumption does not apply to e-mail correspondence. In any event, the trial court did not rely on Evidence Code section 641 in making the factual finding at issue; rather, the record reflects the court "[f]ollow[ed] logic" to infer the e-mails were received based on the evidence above showing they had been sent. Giving the Employer's evidence "'the benefit of every reasonable inference,'" as we must (*ASP Properties*, 133 Cal.App.4th at p. 1266), we discern no error in the court's analysis on this point.

In addition, we reject the Employees' contention that, even if they received the e-mails, they lacked requisite notice of Charter's adoption of Solution Channel because they did not read or review them. As the trial court correctly acknowledged, the fact that the Employees "either chose not to read or take the time to understand [the e-mails] is legally irrelevant. [Citations.]" (*Harris*, 248 Cal.App.4th at p. 383.) This is so because "an employee may [not] avoid an employer's arbitration policy imposed as a condition of employment by remaining willfully, or even negligently, ignorant of the policy[,]" such as by "failing to read a notice the employer sent to notify the employee about the employer's arbitration policy. [Citation.]" (*Avery*, *supra*, 218 Cal.App.4th at pp. 65-66; see also *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1215.)

The question therefore remains whether the Employees' conduct constituted implied assent to their enrollment into Solution Channel and, consequently, their agreement to arbitrate employment-related claims per the program's terms. On this point, we find *Craig*, *supra*, 84 Cal.App.4th 416, instructive.

14

In *Craig*, the plaintiff had been employed by the defendant for 12 years, when the defendant implemented an arbitration program "to resolve 'all employee disputes.'" (*Craig*, *supra*, 84 Cal.App.4th at pp. 418-419.) The defendant mailed the plaintiff a memorandum announcing the arbitration program, which stated the purpose of its establishment, and that it applied to the plaintiff. (*Id.* at p. 419.) The memorandum was accompanied by a brochure containing further information about the program's terms, process, and logistics. (*Ibid.*) The defendant mailed copies of these materials to the plaintiff a second time a few months later, and then a third time in the following year. (*Id.* at p. 421.) Following the arbitration program's implementation, the plaintiff worked for the defendant for another four years, at which point she was terminated. (*Id.* at p. 419.)

The plaintiff sued, asserting her termination was improper based on "a variety of tort and contract theories[.]" (*Craig*, *supra*, 84 Cal.App.4th at p. 419.) In response, the defendant filed a petition to compel arbitration. (*Id.* at pp. 419-420 ) The plaintiff opposed, arguing the defendant failed to show she agreed to arbitrate her claims because it did not present evidence demonstrating the plaintiff received or had knowledge of the arbitration program, such as a signed acknowledgment of the materials' receipt. (*Id.* at p. 420.) The trial court granted the motion, and subsequently confirmed the arbitration award in favor of the defendant. (*Ibid.*)

The Court of Appeal affirmed the judgment. (*Craig*, *supra*, 84 Cal.App.4th at p. 423.) In support of its holding, the Court of Appeal first determined substantial evidence supported the trial court's finding that the plaintiff received the memorandum and brochure concerning the defendant's implementation of the

arbitration program, which informed her the program applied to her. (*Id.* at p. 422.) Accordingly, because the evidence also established the plaintiff continued to work for the defendant after receiving those materials, the Court of Appeal determined she impliedly agreed to be bound by program's terms, including the provision for binding arbitration. (See *id.* at pp. 420, 422)

As discussed above, here, as in *Craig*, the record contains substantial evidence to support the trial court's finding that the Employees received the e-mails announcing Charter's adoption of Solution Channel. Those e-mails informed the Employees that they would be automatically enrolled in Solution Channel, and thereby agreed to resolve employment-related disputes through binding arbitration under the program's terms, unless they opted out within 30 days. Further, the e-mails provided the Employees access to webpages where they could find more information about opting out, and do so if they so desired. Similar to the *Craig* defendant's inclusion of an informational brochure alongside the memorandum, Charter's e-mails also gave the Employees direct access to a webpage containing more details about the program's terms, logistics, and processes, which reiterated the consequences of their participation in the program. In effect, by providing these materials to the Employees, Charter notified them it was unilaterally modifying the terms of their employment agreements by requiring their participation in an arbitration program to resolve employment-related disputes, which would become effective and apply to them in 30 days unless they took appropriate steps to opt out.

As noted above, however, none of the Employees opted out within the time provided. Consequently, when the 30-day period expired, Charter's changes to the terms of their employment

16

agreements took effect. At that point, the Employees were enrolled in Solution Channel and, consequently, agreed to arbitrate their employment-related disputes under the program's terms. Subsequently, like the plaintiff in *Craig*, the Employees continued to work for Charter after receiving notice of, and becoming participants in, their employer's arbitration program. On these facts, we conclude the Employees' conduct (i.e., failing to opt out of Solution Channel and continuing to work for Charter after their enrollment in the program), constituted implied acceptance of Charter's addition of an agreement to arbitrate as a new term of their employment contracts, and the trial court erred by concluding otherwise.

## C. Consideration

Next, the Employers contend the trial court erred by finding the arbitration agreements were not supported by adequate consideration. We agree. The e-mails announcing Charter's implementation of Solution Channel and the Solution Channel Webpage provide that, by virtue of the Employees' participation in Solution Channel, both they and Charter agreed to resolve employment-related disputes through binding arbitration, and to waive their rights to resolve those types of disputes by court litigation. "Where an agreement to arbitrate exists, the parties' mutual promises to forego a judicial determination and to arbitrate their disputes provide consideration for each other." (*Strotz v. Dean Witter Reynolds* (1990) 223 Cal.App.3d 208, 216, overruled on other grounds by *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 407.)

17

## DISPOSITION

The order denying the motion to compel arbitration is reversed. The trial court shall vacate its order denying the motion to compel arbitration and enter a new order granting that motion. Appellants shall recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, J.

We concur:

MANELLA, P.J.

WILLHITE, J.

18