OPINION OF THE COURT
Sgroi, J.
On these appeals we address the question of whether an email message can satisfy the criteria of CPLR 2104 so as to constitute a binding and enforceable stipulation of settlement. Under the circumstances of this case, we conclude that the subject email settlement agreement was enforceable.
On the morning of November 16, 2008, in Westchester County, there was a three-car accident involving the defendant Mitchell G. Mailer, who was driving a car owned by the defendant Gelco Corporation, and leased to Mailer’s employer, Xerox Corporation. The second car was driven by the plaintiff John T. Forcelli, and the third car was driven by the defendant Steven Kuhn, and owned by his wife, the defendant Susan Landon. The accident occurred when Kuhn allegedly drove through a red light and began to cross the southbound lanes of the Saw Mill River Parkway, thereby striking Mailer’s vehicle. The Mailer vehicle was then propelled into the northbound lanes of the same roadway and, as a result, struck Forcelli’s vehicle.
By summons and complaint dated December 8, 2008, Forcelli, and his wife suing derivatively, commenced this action against Gelco, Mailer, Landon, and Kuhn to recover damages for the injuries he allegedly sustained in the accident. Following the *246 completion of discovery, by notice of motion dated January 3, 2011, Gelco and Mailer (hereinafter together the Gelco defendants) moved for summary judgment dismissing the complaint and all cross claims insofar as asserted against them. By notice of cross motion dated February 10, 2011, the plaintiffs cross-moved for summary judgment against Mailer, Landon, and Kuhn on the issue of liability. The motion and cross motion were fully submitted to the court on March 18, 2011.
On that same day, the plaintiffs and their counsel appeared for mediation with counsel for the Gelco defendants, along with a representative of Xerox and Brenda Greene, a claims adjuster with Sedgwick CMS, the insurer of the Gelco defendants’ vehicle. According to the plaintiffs’ counsel, Greene and the Xerox representative informed him that they had authority to settle the case on behalf of their insureds. However, the parties did not reach a settlement at the mediation.
On April 22, 2011, Greene contacted the plaintiffs’ counsel by telephone to revive settlement negotiations. During that conversation, Greene offered $200,000 to settle the case on behalf of the Gelco defendants and Xerox. After subsequent negotiations over the following days, on May 3, 2011, Greene offered $230,000 to settle the case, and the plaintiffs’ counsel orally accepted the offer on behalf of the plaintiffs. That same day, Greene sent an email message to the plaintiffs’ counsel, with a copy to the Xerox representative, stating the following:
“Per our phone conversation today, May 3, 2011, you accepted my offer of $230,000 to settle this case. Please have your client executed [sic] the attached Medicare form as no settlement check can be issued without this form.
“You also agreed to prepare the release, please included [sic] the following names: Xerox Corporation, Gelco Corporation, Mitchell G. Mailer and Sedgwick CMS. Please forward the release and dismissal for my review. Thanks Brenda Greene.”
On May 4, 2011, Forcelli signed a release, notarized by the plaintiffs’ counsel, stating that he was releasing Xerox, the Gelco defendants, and Sedgwick CMS from all actions involving the subject accident in exchange for receiving $230,000 from Sedgwick CMS. On May 10, 2011, the Supreme Court issued an order granting the Gelco defendants’ motion for summary judgment dismissing the complaint and all cross claims insofar as *247 asserted against them and granting that branch of the plaintiffs’ cross motion which was for summary judgment against Kuhn and Landon on the issue of liability. On May 11, 2011, John Hsu, counsel for the Gelco defendants, received an email alert informing him of the court’s order. Later that day, Hsu served the order with a notice of entry on counsel for the plaintiffs and on counsel for Kuhn and Landon by overnight mail. Meanwhile, on the same day, the plaintiffs’ counsel sent to Greene, by fax and by certified mail, the release signed by Forcelli, and a stipulation of discontinuance against the Gelco defendants dated May 11, 2011, and signed by the plaintiffs’ counsel. The certified return receipt indicates that Sedgwick CMS received the documents by mail on May 16, 2011.
According to Hsu, on May 12, 2011, he was informed by Sedgwick CMS of the existence of the documents which had been faxed to Greene on the previous day. Hsu then faxed and mailed a letter dated May 12, 2011, to the plaintiffs’ counsel, advising that the release and stipulation of discontinuance “is hereby rejected.” The letter further stated that, since “there was no settlement consummated under New York CPLR 2104 between the parties, we considered this matter dismissed by the court’s decision . . . dated May 10, 2011, and served upon your office by overnight mail on May 11, 2011.”
On May 23, 2011, the plaintiffs moved, inter alia, to vacate the order dated May 10, 2011, and to enforce the settlement agreement, as set forth in Greene’s email message, between the plaintiffs and the Gelco defendants. In a supporting affirmation, the plaintiffs’ counsel argued that Greene’s email message sent on May 3, 2011, constituted a binding written settlement agreement pursuant to CPLR 2104. In opposition, the Gelco defendants argued, inter alia, that the email message did not constitute a binding written settlement agreement.
In an order dated July 20, 2011, the Supreme Court granted those branches of the plaintiffs’ motion which were to vacate so much of the order dated May 10, 2011, as granted the Gelco defendants’ motion for summary judgment dismissing the complaint insofar as asserted against them and, thereupon, to enforce the settlement agreement between the plaintiffs and the Gelco defendants. Judgment was entered upon the order in favor of the plaintiffs and against the Gelco defendants in the principal sum of $230,000.
“Stipulations of settlement are judicially favored, will not lightly be set aside, and ‘are to be enforced with rigor and *248 without a searching examination into their substance’ as long as they are ‘clear, final and the product of mutual accord’ ” (Peralta v All Weather Tire Sales & Serv., Inc., 58 AD3d 822, 822 [2009], quoting Bonnette v Long Is. Coll. Hosp., 3 NY3d 281, 286 [2004]). To be enforceable, stipulations of settlement must conform to the criteria set forth in CPLR 2104 (see Eastman v Steinhoff, 48 AD3d 738, 739 [2008]; Marpe v Dolmetsch, 256 AD2d 914 [1998]). Where, as here, a settlement is not made in open court, CPLR 2104 provides: “An agreement between parties or their attorneys relating to any matter in an action ... is not binding upon a party unless it is in a writing subscribed by him or his attorney.” “The plain language of the statute directs that the agreement itself must be in writing, signed by the party (or attorney) to be bound” (Bonnette v Long Is. Coll. Hosp., 3 NY3d at 286). In addition, since settlement agreements are subject to the principles of contract law, “for an enforceable agreement to exist, all material terms must be set forth and there must be a manifestation of mutual assent” (Diarassouba v Urban, 71 AD3d 51, 60 [2009]; see Bonnette v Long Is. Coll. Hosp., 3 NY3d at 285-286).
Here, Greene’s email message set forth the material terms of the agreement, to wit, the acceptance by the plaintiffs’ counsel of an offer of $230,000 to settle the case in exchange for a release in favor of the defendants, and contained an expression of mutual assent. Significantly, the settlement was not conditioned on any further occurrence, such as the outcome of the motion for summary judgment or the formal execution of the release and stipulation of dismissal by these defendants and related entities (cf. Williams v Bushman, 70 AD3d 679 [2010]).
Furthermore, contrary to the Gelco defendants’ contention, the fact that neither they nor their counsel entered into the agreement did not invalidate the agreement. A party will be bound by the acts of its agent in settlement negotiations and an agreement will be binding where the agent has either actual or apparent authority (see Hallock v State of New York, 64 NY2d 224 [1984]; Smith v Lefrak Org., 142 AD2d 725, 726 [1988]). Moreover, “a liability insurer’s duty to pay is normally coupled with such insurer’s right to control the defense of its insured, [a right which] corresponds to the recognized right of the insurer to protect its own financial interest” (M & M Elec, v Commercial Union Ins. Co., 241 AD2d 58, 61-62 [1998]; see Federal Ins. Co. v North Am. Specialty Ins. Co., 83 AD3d 401 [2011]; see also Matter of Eighth Jud. Dist. Asbestos Litig., 302 AD2d 908 [2003]; Lowe v Steinman, 284 AD2d 506, 507-508 [2001]).
*249 The record clearly demonstrates that Greene, as a representative of the Gelco defendants’ insurer, was clothed with apparent authority to settle the case on behalf of the insured. Indeed, the Gelco defendants did not dispute the assertion by the plaintiffs’ counsel that it was represented to him at the mediation that Greene had authority to settle the case on behalf of these defendants, and they do not dispute this assertion on appeal. Thus, Greene’s email message also satisfied the criteria of CPLR 2104 insofar as it was a writing made by an individual with authority to bind the party to be bound. The only remaining question is whether the email message can be considered “subscribed” under CPLR 2104 and, thus, capable of enforcement.
Courts have long recognized that traditional correspondence can qualify as an enforceable stipulation of settlement under CPLR 2104. For example, in the case of Wronka v GEM Community Mgt. (49 AD3d 869, 872 [2008]), we held that an exchange of correspondence between counsel for a third-party defendant insurer offering to share the costs of the defense in the main action, and counsel for a defendant accepting the offer, set forth the material terms of the stipulation, and therefore, constituted an enforceable stipulation pursuant to CPLR 2104. In Davidson v Metropolitan Tr. Auth. (44 AD3d 819, 819 [2007]), we stated: “[t]he subsequent letter written by the plaintiffs attorney on behalf of the party to be bound confirmed the essential terms of the oral settlement agreement reached at the pretrial conference and was a subscribed writing sufficient to satisfy the requirements of CPLR 2104.” Similar results can be found in cases from other Judicial Departments of the Appellate Division (see e.g. Palmo v Straub, 45 AD3d 1090, 1092 [3d Dept 2007] [in a letter to a plaintiff injured in a car accident, plaintiffs insurer requested a signed written statement agreeing to a lien on the future settlement in the personal injury action for the overpayment of benefits given to him by the insurer; plaintiff confirmed in writing that he agreed to accept the lien, as did his attorney in a separate letter; this series of writings established an enforceable settlement agreement, which contained all material terms and was the product of mutual accord]; Roberts v Stracick, 13 AD3d 1208 [4th Dept 2004] [case properly dismissed as settled pursuant to CPLR 2104 where letter sent by plaintiffs attorney constituted a firm settlement offer open for 30 days, and defendant timely notified plaintiff by letter within 30 days of acceptance of settlement offer]; Gaglia *250 v Nash, 8 AD3d 992, 993 [4th Dept 2004] [although defendant’s attorney did not countersign a letter sent by plaintiffs attorney setting forth the terms of a settlement agreement, subsequent letters acknowledging the settlement and signed by defendant’s attorney constituted a subscribed writing satisfying CPLR 2104]).
It is, of course, axiomatic that a letter can be considered “subscribed,” since letters are usually signed at the end by the author thereof. However, email messages cannot be signed in the traditional sense. Nevertheless, this lack of “subscription” in the form of a handwritten signature has not prevented other courts from concluding that an email message, which is otherwise valid as a stipulation between parties, can be enforced pursuant to CPLR 2104. In the case of Williamson v Delsener (59 AD3d 291, 291 [2009]), the Appellate Division, First Department, stated that “e-mails exchanged between counsel, which contained their printed names at the end, constitute signed writings (CPLR 2104) within the meaning of the statute of frauds.” In the case of Brighton Inv., Ltd. v Har-Zvi (88 AD3d 1220, 1222 [2011]), the Appellate Division, Third Department, stated that “an exchange of e-mails may constitute an enforceable contract, even if a party subsequently fails to sign implementing documents, when the communications are sufficiently clear and concrete to establish such an intent” (internal quotation marks omitted).
Morever, given the now widespread use of email as a form of written communication in both personal and business affairs, it would be unreasonable to conclude that email messages are incapable of conforming to the criteria of CPLR 2104 simply because they cannot be physically signed in a traditional fashion (see Newmark & Co. Real Estate Inc. v 2615 E. 17 St. Realty LLC, 80 AD3d 476, 477-478 [2011] [“e-mail agreement set forth all relevant terms of the agreement . . . and thus, constituted a meeting of the minds”]). Indeed, such a conclusion is buttressed by reference to State Technology Law, former article I, “Electronic Signatures and Records Act,” which was enacted by the legislature in 2002. In the accompanying statement of legislative intent, the legislature stated in part: “[This act] is intended to support and encourage electronic commerce and electronic government by allowing people to use electronic signatures and electronic records in lieu of handwritten signatures and paper documents” (L 2002, ch 314, § 1). Section 302 (3) of this statute states that an “ ‘[electronic signature’ shall mean an electronic *251 sound, symbol, or process, attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the record.” Section 304 (2) of the statute states that “an electronic signature may be used by a person in lieu of a signature affixed by hand [and] [t]he use of an electronic signature shall have the same validity and effect as the use of a signature affixed by hand.”
In the case at bar, Greene’s email message contained her printed name at the end thereof, as opposed to an “electronic signature” as defined by the Electronic Signatures and Records Act. Nevertheless, the record supports the conclusion that Greene, in effect, signed the email message. In particular, we note that the subject email message ended with the simple expression, “Thanks Brenda Greene,” which appears at the end of the email text. This indicates that the author purposefully added her name to this particular email message, rather than a situation where the sender’s email software has been programmed to automatically generate the name of the email sender, along with other identifying information, every time an email message is sent (cf. DeVita v Macy’s E., Inc., 36 AD3d 751 [2007]). In addition, the circumstances which preceded Greene’s email message, and in particular, the face-to-face mediation at which settlement was attempted and the subsequent follow-up telephone calls between Greene and the plaintiffs counsel, support the conclusion that Greene intended to “subscribe” the email settlement for purposes of CPLR 2104 (see Newmark & Co. Real Estate Inc. v 2615 E. 17th St. Realty LLC, 80 AD3d at 477 [“e-mail sent by a party, under which the sending party’s name is typed, can constitute a writing for purposes of the statute of frauds”]; see also Naldi v Grunberg, 80 AD3d 1, 6-13 [2010]).
Accordingly, we hold that where, as here, an email message contains all material terms of a settlement and a manifestation of mutual accord, and the party to be charged, or his or her agent, types his or her name under circumstances manifesting an intent that the name be treated as a signature, such an email message may be deemed a subscribed writing within the meaning of CPLR 2104 so as to constitute an enforceable agreement. Therefore, the Supreme Court properly granted those branches of the plaintiffs’ motion which were to vacate so much of the order dated May 10, 2011, as granted the motion of the Gelco defendants for summary judgment dismissing the complaint insofar as asserted against them and, thereupon, to enforce a *252 settlement agreement between the plaintiffs and the Gelco defendants, and properly entered a judgment in favor of the plaintiffs and against the Gelco defendants in the principal sum of $230,000, in accordance with CPLR 5003-a (e).
The appeal from the intermediate order must be dismissed because the right of direct appeal therefrom terminated with the entry of judgment in the action (see Matter of Aho, 39 NY2d 241, 248 [1976]). The issues raised on the appeal from the order are brought up for review and have been considered on the appeal from the judgment (see CPLR 5501 [a] [1]).
Accordingly, the appeal from the order is dismissed and the judgment is affirmed.
Mastro, J.P., Balkin and Cohen, JJ., concur.
Ordered that the appeal from the order is dismissed; and it is further,
Ordered that the judgment is affirmed; and it is further,
Ordered that one bill of costs is awarded to the plaintiffs.