Nieves v Mt. Sinai Queens Hosp. (2024 NY Slip Op 24135)

[*1]

Nieves v Mt. Sinai Queens Hosp.

2024 NY Slip Op 24135

Decided on May 6, 2024

Supreme Court, Queens County

Catapano-Fox, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on May 6, 2024
Supreme Court, Queens County

STELLA NIEVES, individually, and as Administrator of the 
 Estate of GILBERT NIEVES, Deceased, Plaintiff,

against
Mt. Sinai Queens Hospital, MT. SINAI NY HOSPITAL, DR. ERIK BLUTINGER, DR. MOHAMMED ELFATIHI, DR. KATHLEEN KARANIKOLAS, and "JANE DOE", Defendants.

Index No. 703943/2021

Lance Ehrenberg, Esq. for plaintiff, and Megan E. Verbos from the law office of Shaub Ahmuty Citrin Spratt LLP for defendants

Tracy Catapano-Fox, J.

The following papers numbered EF-54 to EF-87 read on this application by defendants THE MOUNT SINAI HOSPITAL s/h/a MT. SINAI QUEENS HOSPITAL, THE MOUNT SINAI HOSPITAL s/h/a MT. SINAI NY HOSPITAL, ERIK BLUTINGER, M.D., s/h/a DR. ERIK BLUTINGER, MOHAMMED ELFATIHI, M.D. s/h/a DR. MOHAMMED ELFATIHI and KATHLEEN KARANIKOLAS, M.D. s/h/a DR. KATHLEEN KARANIKOLAS to enforce the Post Mediation Agreement and direct plaintiff STELLA NIEVES to execute all required settlement papers pursuant to CPLR §2104, and this cross-motion by plaintiff for an Order vacating the Post Mediation Agreement and directing all parties to enter into a Compliance Conference order for the continuation of discovery.
Papers/Numbered
Order to Show Cause, Affirmation, Exhibits EF54-EF65
Notice of Cross-Motion, Affirmation, Exhibits EF72-EF82
Affirmation in Opposition, Exhibits EF83-EF85
Reply Affirmation, Exhibits EF86-EF97
Upon the foregoing papers and oral argument, it is ordered that this application and this cross-motion are determined as follows:
Defendants The Mount Sinai Hospital s/h/a Mt. Sinai Queens Hospital, The Mount Sinai Hospital s/h/a Mt. Sinai NY Hospital, Erik Blutinger, M.D., s/h/a Dr. Erik Blutinger, Mohammed Elfatihi, M.D. s/h/a Dr. Mohammed Elfatihi, and Kathleen Karanikolas, M.D., s/h/a Dr. Kathleen Karanikolas' (hereinafter referred to as "defendants") application to enforce the Post Mediation Agreement and direct plaintiff Stella Nieves to execute all required settlement papers pursuant to CPLR §2104 is denied. Plaintiff's cross-motion for an Order vacating the [*2]Post Mediation Agreement and directing all parties to enter into a Compliance Conference for the continuation of discovery is granted.
Plaintiff commenced this medical malpractice action arising out of decedent Gilbert Nieves' visits to Mount Sinai on October 29, 2020 and November 2, 2020. Plaintiff filed the Summons with Notice on February 19, 2021, followed by the Complaint on April 29, 2021. Issue was joined via the filing of defendants' Answer on May 5, 2021. The parties attended a mediation on June 14, 2023 and subsequently entered into a written Post Mediation Settlement Agreement. Plaintiff's counsel then obtained Orders in Surrogate's Court, including a final decree, seeking approval of the settlement. On January 10, 2024, defendants forwarded a letter from The Rawlings Company regarding an Aetna-Medicare Advantage lien, the same date that Queens Surrogate Kelly approved the settlement. On January 11, 2024, plaintiff indicated her intent to vacate the settlement agreement in light of the lien. It is noted that plaintiff subsequently made an application in Surrogate's Court to vacate the decree which was stayed pending the determination of the instant application and cross-motion.
Defendants argue that the Post Mediation Agreement should be enforced pursuant to CPLR §2104, and plaintiff should be directed to execute all required settlement paperwork. Defendants present the agreement executed at the mediation, several emails between counsels, Surrogates Court Orders, and a Notice of Medicare Advantage Policy Subrogation Claim letter in support of their application. They note that on May 17, 2021, plaintiff's counsel represented by email and letter that there were no conditional liens. Defendants further note that during the mediation on June 14, 2023, plaintiff's counsel again represented that there were no Medicare, Medicaid or ERISA liens. They note that after hours of negotiation during the mediation, the parties reached a settlement for a confidential amount, and the Post Mediation agreement provided that the parties agreed to the settlement, which was final and enforceable in court. Defendants present an email dated August 29, 2023 in which plaintiff's counsel represented there was no Medicare lien and attached a CMS letter reflecting no lien. 
Defendants argue that the settlement agreed upon at the June 14, 2023 mediation is enforceable and binding upon plaintiff. Defendants argue that there was a clear intent by both parties to settle this case for the agreed-upon amount, evidenced by the Agreement, emails between the parties, and Orders that plaintiff obtained from Surrogate's Court. Defendants argue that based upon the documentary evidence presented, the agreement constitutes a valid, legally enforceable contract. Defendants further argue that based upon counsels' communications, plaintiff's counsel held himself out as having authority to enter into the settlement and there is no evidence to suggest that plaintiff did not intend to be bound by the agreement. Defendants further argue that the email correspondence alone is sufficient to bind plaintiff to the settlement, as the emails encompassed the terms of the agreement and plaintiff failed to raise any objections. Defendants also argue that there is no good cause to invalidate the agreement and to the contrary, strong public policy considerations favor the enforcement of settlement agreements. They further argue that vacating the negotiated settlement would be unfair and disparage the integrity of alternative dispute resolution proceedings. Defendants reason that there was no mistake as plaintiff was aware throughout the litigation that decedent was a Medicare beneficiary, as plaintiff testified during her deposition that decedent had Aetna Medicare. They argue that it [*3]was incumbent upon plaintiff to exercise due diligence to determine the existence of any liens, and plaintiff represented throughout discovery and mediation that there were no liens, evidencing plaintiff's lack of due diligence. They also contend that plaintiff should not benefit from the lack of due diligence in ascertaining the liens, and therefore this Court should enforce the settlement.
Plaintiff opposes the motion and cross-moves for vacatur of the Post Mediation Agreement dated June 14, 2023. Plaintiff presents documentation and minutes from a hearing before Queens Surrogate Peter J. Kelly, emails between counsels, a settlement letter, a Notice of Medicare Advantage Policy Subrogation Claim letter indicating the lien is approximately $907,000.00, and affidavits from decedent's children in support of her cross-motion. Plaintiff argues that the agreement should be vacated because the parties were unaware of the Aetna Medicare lien at the time of the mediation. She argues that vacatur of the agreement because of a mutual mistake is proper, and the lack of any actual knowledge regarding a substantial lien has been recognized by the Second Department as a basis to vacate a settlement. Plaintiff further argues that enforcement of the settlement would be grossly unfair, as the lien is over half of the settlement amount and over two-thirds of the net recovery of plaintiff and decedent's children. She also argues that defendants inexplicably waited for six months after the mediation to alert plaintiff that there may be an Aetna Medicare lien and in light of the surprise lien and its magnitude, the settlement is unjust and unenforceable. 
Pursuant to CPLR §2104, a settlement agreement is binding upon a party if it is in writing subscribed either by the party or its counsel. (Martin v. Harrington, 139 AD3d 1017, 1018 [2d Dept. 2016].) To be enforceable, a settlement agreement must set forth all material terms, and there must be clear mutual accord between the parties. (Id.) Stipulations of settlement are favored by the courts and not to be lightly set aside. (Young v. Young, 178 AD3d 1124, 1125 [2d Dept. 2019].) However, since settlement agreements are subject to the principles of contract law, 'for an enforceable agreement to exist, all material terms must be set forth and there must be a manifestation of mutual assent.' (Forcelli v. Gelco Corp., 109 AD3d 244, 248 [2d Dept. 2013].)
A party seeking to vacate or set aside a settlement has the burden of establishing good cause sufficient to invalidate a contract, "such as that the stipulation was the result of duress, fraud, or overreaching, or that the terms of the stipulation were unconscionable, in order to be relieved from the consequences of the stipulation." (Amarally v. Liberty King Produce, Inc., 170 AD3d 637, 638 [2d Dept. 2019].) An agreement may also be rescinded based on a mutual mistake by the parties when the agreement, in some material respect, does not represent the meeting of the minds of the parties. (People v. Perretta, 187 AD3d 1076, 1077 [2d Dept. 2020].) In that situation, the party moving for vacatur of the agreement must demonstrate that the mistake existed at the time the settlement was entered into by the parties. (Id; see also Matter of Garber, 154 AD3d 850, 851 [2d Dept. 2017][holding that to vacate a stipulation of settlement on the ground of mutual mistake, the appellant was required to demonstrate that the mistake existed at the time the stipulation was entered into and that it was so substantial that the stipulation failed to represent a true meeting of the parties' minds].)
Defendants' application to enforce the settlement pursuant to CPLR §2104 is denied, and plaintiff's cross-motion to vacate the settlement is granted. (See Mahon v. NY City Health & Hosps. Corp., 303 AD2d 725 [2d Dept. 2003].) Defendants' arguments focus on whether the Post Mediation Agreement constituted an enforceable settlement, which under the facts presented, might not clearly fit the requirements of CPLR §2104. However, this analysis is irrelevant because here it is undisputed that the parties intended for the Post Mediation agreement to constitute a binding, enforceable settlement. Based upon the email communications between the parties and Orders obtained in Surrogate's Court, it is evident that both parties demonstrated a clear, unequivocal intent to settle this action for the terms in the agreement. 
Therefore, the sole issue for the Court to decide is whether the Post Mediation agreement should be vacated based upon mutual mistake, in that neither party knew of the Aetna Medicare lien during the mediation on June 14, 2023. Plaintiff demonstrated that the Post Mediation agreement was based on a mistake and did not represent a true meeting of the minds, as plaintiff was unaware of the exorbitant lien at the time of the mediation despite taking efforts to ascertain the existence of liens. Defendants demonstrated that plaintiff testified about the existence of Aetna Medicare insurance at her deposition, and correctly noted that it was incumbent on plaintiff to pursue this potential lien prior to entering into the mediation. Plaintiff's counsel presented no good excuse for failing to ascertain the existence of Aetna Medicare insurance and lien, but merely alleges he pursued "traditional" Medicare insurance, which in and of itself, might lend against finding a mutual mistake. (See Matter of Phila. Ins. Indemn. Co. v. Kendall, 197 AD3d 75 [1st Dept. 2021].)
However, a plain reading of the caselaw shows that the mutual mistake, the Aetna Medicare lien, existed at the time of the mediation and was so substantial that the Post Mediation agreement failed to represent a true meeting of the parties' minds. (See Mahon, supra at 725.) Plaintiff presented affidavits from decedent's children Jennifer Ruiz and David Nieves, who stated they agreed to the settlement terms without knowledge of any liens, and would not have assented to the settlement if aware of the substantial Aetna Medicare lien that would severely diminish the estate's share of the settlement. (See id.) The email exchanges between counsel also demonstrate that neither party was aware of the existence of the Medicare lien prior to or at the time of the mediation. Therefore, plaintiff demonstrated that vacatur of the settlement based upon mutual mistake is warranted.
Defendants' argument that plaintiff's reliance on Mahon is misplaced is without merit, as the Second Department clearly held in Mahon that there was no true meeting of the parties' minds because none of the parties considered the impact of a potential Medicaid lien when entering into the settlement. (Id. at 725.) Defendants also failed to demonstrate that there had been partial performance of the terms of the settlement, and presented no caselaw to support the argument that seeking approval by the Surrogate constituted partial performance. Rather, it is clear based upon the parties' communications that there could be no partial or full performance until the Surrogate approved the settlement, which occurred on the same date as defendants discovered the Medicare Advantage lien. Furthermore, defendants' argument that the ADR process would be impacted by vacating the agreement is without merit, as it is clear that the mediation process was very successful in reaching an amicable settlement, and through no fault [*4]of the ADR process was the agreement vacated. 
There is no question that negotiations in complex litigation such as medical malpractice matters rely upon the good faith representations of the parties. There is also no question that the existence of liens has a significant impact on the parties' ability to settle an action. During oral argument, this Court asked counsel which party had the obligation to ascertain the existence of liens, and neither party presented a definitive answer. Based upon existing caselaw and fundamental notions of fairness, it is clear that plaintiffs have the burden of presenting evidence of liens or affidavits of no-liens to defendants in order to facilitate meaningful settlement discussions. Contrary to plaintiff's argument in this action, defendants do not have a burden to investigate the existence of liens, but the failure to do so when made aware of the potential for liens may result in similar circumstances as to those present here. Under these circumstances, enforcing the Post Mediation agreement would result in severe prejudice to decedent's estate, who would receive little to no compensation from the settlement proceeds after the lien was satisfied. To the contrary, vacating the settlement would not severely prejudice defendants, but would result in minimal inconvenience to defendants in allowing the litigation to proceed.
Accordingly, defendants The Mount Sinai Hospital s/h/a Mt. Sinai Queens Hospital, The Mount Sinai Hospital s/h/a Mt. Sinai NY Hospital, Erik Blutinger, M.D., s/h/a Dr. Erik Blutinger, Mohammed Elfatihi, M.D. s/h/a Dr. Mohammed Elfatihi, and Kathleen Karanikolas, M.D., s/h/a Dr. Kathleen Karanikolas' application to enforce the Post Mediation Agreement and direct plaintiff Stella Nieves to execute all required settlement papers pursuant to CPLR §2104 is denied. Plaintiff's cross-motion for an Order vacating the Post Mediation Agreement and directing all parties to enter into a Compliance Conference order for the continuation of discovery is granted. The parties are directed to appear on Tuesday, June 4, 2024 at 9:30am in Courtroom 48 for a Compliance Conference.
This constitutes the decision and Order of the Court.
Dated: May 6, 2024
Hon. Tracy Catapano-Fox, J.S.C.