St. Louis v Cap Com Fed. Credit Union (2024 NY Slip Op 05256)

St. Louis v Cap Com Fed. Credit Union

2024 NY Slip Op 05256

Decided on October 24, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 24, 2024

CV-23-0647
[*1]Todd A. St. Louis, as Administrator of the Estate of Jane A. Donivan, Deceased. Appellant,
v
Cap Com Federal Credit Union, Respondent.

Calendar Date:September 10, 2024

Before:Egan Jr., J.P., Pritzker, Lynch, McShan and Powers, JJ.

Romanucci Law Firm, Latham (Nicholas E. Tishler, East Chatham, of counsel), for appellant.
Litchfield Cavo, LLP, New York City (Brian S. Gitnik of counsel), for respondent.

Pritzker, J.
Appeal from an order of the Supreme Court (Martin D. Auffredou, J.), entered March 17, 2023 in Warren County, which granted defendant's motion to enforce a settlement agreement.
Plaintiff's sister, Jane A. Donivan (hereinafter decedent), passed away in November 2019. Weeks later, defendant, the servicer of a mortgage on decedent's property, hired Sand Castle Field Services to perform an inspection of the property. Approximately one month after decedent's death, despite all mortgage payments being up to date, defendant sent a pre-foreclosure notice. A few days after sending this notice, Sand Castle entered the property and, among other things, cut a gas line and removed decedent's personal belongings from the home.
Plaintiff subsequently commenced this action asserting that defendant entered the property before it became delinquent, in violation of RPAPL 1301 (1), and that plaintiff was entitled to actual and punitive damages for defendant's trespass, trespass to chattel and conversion. The parties engaged in settlement negotiations and, in an email dated March 5, 2022, defendant indicated that it could resolve the case for $30,000 if plaintiff agreed to change the parties in the caption of the complaint. Plaintiff amended the complaint two days later, changing the defendant from "CAP COM Financial Services, LLC" to "CAP COM Federal Credit Union." Defendant then sent the proposed settlement documents to plaintiff, but plaintiff did not sign them. Approximately six months later, plaintiff hired a new attorney. Defendant, after not receiving a response from plaintiff, filed a motion seeking to enforce the purported settlement agreement. Plaintiff opposed the motion. Supreme Court granted the motion finding, among other things, that a settlement agreement had been reached through a telephone call and memorialized through email. Plaintiff appeals.
Plaintiff contends that the communications between the parties did not result in a binding agreement. "Stipulations of settlement are judicially favored, will not lightly be set aside, and 'are to be enforced with rigor and without a searching examination into their substance' as long as they are 'clear, final and the product of mutual accord' " (Peralta v All Weather Tire Sales & Serv., Inc., 58 AD3d 822, 822 [2d Dept 2009], quoting Bonnette v Long Is. Coll. Hosp., 3 NY3d 281, 286 [2004]). "To be enforceable, stipulations of settlement must conform to the requirements of CPLR 2104" (Eastman v Steinhoff, 48 AD3d 738, 739 [2d Dept 2008] [citations omitted]). "Where, as here, a settlement is not made in open court, CPLR 2104 provides: 'An agreement between parties or their attorneys relating to any matter in an action . . . is not binding upon a party unless it is in a writing subscribed by him or his attorney' " (Forcelli v Gelco Corp., 109 AD3d 244, 248 [2d Dept 2013], quoting CPLR 2104; see Matter of George W. & Dacie Clements Agric. Research Inst., Inc. v Green, 130 AD3d 1422, 1423 [3d Dept 2015]). "Writings [*2]between parties to an action or proceeding that discuss the possibility of settlement will be considered to constitute a binding agreement if the settlement agreement was adequately described in such writings, namely, the agreement was clear, the product of mutual accord and contained all material terms" (Matter of George W. & Dacie Clements Agric. Research Inst., Inc. v Green, 130 AD3d at 1423 [internal quotation marks, brackets and citations omitted]; see Matter of Eckert, 217 AD3d 1151, 1152 [3d Dept 2023], lv dismissed 40 NY3d 1024 [2023]).
"Here, the material terms of the settlement were set forth in an email by [defendant's] counsel and accepted in a response subscribed by [plaintiff's] former attorney, who had apparent authority to settle the case on [its] behalf" (Alessina v El Gauchito II, Corp., 220 AD3d 645, 647 [2d Dept 2023] [citations omitted], lv denied 41 NY3d 958 [2024]; see Forcelli v Gelco Corp., 109 AD3d at 248).[FN1] We are unpersuaded by plaintiff's contention that the email confirming the settlement amount of $30,000 was "hypothetical" given that it did not "anticipate a subsequent writing that is to officially memorialize the existence of the settlement agreement and set forth all of its material terms" (Matter of George W. & Dacie Clements Agric. Research Inst., Inc. v Green, 130 AD3d at 1423-1424; see Herz v Transamerica Life Ins. Co., 172 AD3d 1336, 1338 [2d Dept 2019]). Rather, subsequent emails merely confirmed that plaintiff had filed an amended complaint to correct defendant's name in the caption, which was one of the terms set forth in the settlement as detailed by defendant's attorney (see Martin v Harrington, 139 AD3d 1017, 1018 [2d Dept 2016]). Nor do we find, contrary to plaintiff's contention, that the settlement was conditioned on the formal execution of general releases (see Shah v Wilco Sys., Inc., 81 AD3d 454, 455 [1st Dept 2011], lv dismissed 17 NY3d 901 [2011]; see also Forcelli v Gelco Corp., 109 AD3d at 248; Tooker v Castille, 260 AD2d 298, 298-299 [1st Dept 1999]), and that by not signing the releases, plaintiff rejected the settlement (see Herz v Transamerica Life Ins. Co., 172 AD3d at 1338).[FN2]
As to the content of the hold harmless agreement specifically, we find no merit to plaintiff's assertion that the inclusion of defendant's nonparty agents and/or representatives was a material term not agreed to by the parties, thus evincing that there was not a meeting of the minds; thus, the settlement is binding. It is abundantly clear from the emails between the attorneys for the parties that, other than the filing of the amended complaint to correct the caption, the only material term of the settlement agreement was the amount that plaintiff would accept to settle the claim (see Rawald v Dormitory Auth. of the State of N.Y., 199 AD3d 477, 478 [1st Dept 2021]; Matter of Philadelphia Ins. Indem. Co. v Kendall, 197 AD3d 75, 81 [1st Dept 2021]). None of the emails, including those after plaintiff's attorney received [*3]the hold harmless agreement, evince any quarrel by plaintiff regarding the contents of said agreement. Rather, the only communication regarding the content of the hold harmless agreement is defendant's attorney's request to add "a/k/a Capital Communications Federal Credit Union" to defendant's name within the body of the document. Moreover, as to the release of additional parties in the hold harmless agreement, specifically Sand Castle, it is clear from the complaint that plaintiff was aware of Sand Castle's involvement in, among other things, cutting the gas line and disposing of decedent's property. Despite this knowledge, plaintiff failed to name Sand Castle as a party to the action, nor did plaintiff raise any issue as to the hold harmless agreement releasing Sand Castle from liability for the actions in the complaint. Therefore, we agree with Supreme Court's determination that the agreement was enforceable. We have examined plaintiff's remaining contentions and find them to be without merit.
Egan Jr., J.P., Lynch, McShan and Powers, JJ., concur.
ORDERED that the order is affirmed, with costs.

Footnotes

Footnote 1: Indeed, at oral argument, plaintiff's counsel conceded that plaintiff's former attorney had actual authority.

Footnote 2: In fact, on April 15, 2022, plaintiff emailed defendant inquiring as to when defendant would have the funds. This was the first email sent by plaintiff after notifying defendant that the amended complaint was filed.