Matter of Battat v Rejwan (2024 NY Slip Op 05975)

Matter of Battat v Rejwan

2024 NY Slip Op 05975

Decided on November 27, 2024

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 27, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

BETSY BARROS, J.P.
VALERIE BRATHWAITE NELSON
BARRY E. WARHIT
JAMES P. MCCORMACK, JJ.

2023-10032
 (Index No. 516774/22)

[*1]In the Matter of Menashe Battat, etc., appellant,
v
Shaul Rejwan, etc., respondent.

Edward Weissman, New York, NY, for appellant.
Massoud & Pashkoff, LLP, New York, NY (Lisa Pashkoff of cousnel), for respondent.

DECISION & ORDER
In a proceeding, inter alia, for the judicial dissolution of a corporation, the petitioner appeals from an order of the Supreme Court, Kings County (Leon Ruchelsman, J.), dated September 19, 2023. The order, insofar as appealed from, granted the respondent's motion to enforce the terms of a settlement agreement.
ORDERED that the order is affirmed insofar as appealed from, with costs.
The petitioner, Menashe Battat, and the respondent, Shaul Rejwan, jointly owned Baby Time International, Inc. (hereinafter Baby Time), a business specializing in children's goods. Following a fire in the Baby Time warehouse, Battat commenced this proceeding against Rejwan, inter alia, for the judicial dissolution of Baby Time. In early 2023, the parties entered into an agreement settling the proceeding (hereinafter the settlement agreement). Under the settlement agreement, the parties agreed to wind up Baby Time's operations and to deposit open account receivables collected and the proceeds of an insurance claim concerning the warehouse fire, among other funds of Baby Time, in an escrow account jointly held by both parties' counsel.
Subsequently, Rejwan's counsel attempted to open a joint escrow account at a bank. However, the bank informed her that it was not possible to establish a jointly held escrow account in the name of two separate law firms. As such, the parties agreed by email that Rejwan's counsel would set up the escrow account in her firm's name and hold Baby Time's funds for the parties in the escrow account. Additionally, in connection with insurance claims filed on behalf of Baby Time relating to the warehouse fire, Battat's prior counsel sent an email to an insurance agent for Lloyd's of London/Vanguard Insurance in which he wrote, "this is to confirm that we have authorized [Rejwan's counsel] to collect the insurance claim to be deposited into an escrow account she set up." A different insurance company required Battat's prior counsel and Rejwan's counsel to execute a "Mutual Agreement Regarding Claim Handling and Settlement" (hereinafter the mutual agreement), confirming the parties' escrow arrangement and the proposed distribution of proceeds. The mutual agreement, among other things, stated that "[Baby Time] expressly directs all proceeds for the above-referenced insurance claim shall be made payable to '[Baby Time] International Inc.' and will be turned over to [Rejwan's counsel], as Escrow Agent, to be held for the benefit of [Baby Time]." The mutual agreement was physically signed by Battat's prior counsel and Rejwan's counsel.
In May 2023, Battat discharged his prior counsel and retained new counsel. Battat's new counsel took issue with Rejwan's counsel being the sole holder of the escrow account, contending that this arrangement breached the settlement agreement. Battat's new counsel also alleged that Rejwan misappropriated Baby Time's funds after entering into the settlement agreement. Despite efforts to resolve their issues with the escrow account, the parties were unable to come to a solution amenable to each other. Meanwhile, Battat's new counsel refused to transfer into the escrow account $90,000 in Baby Time's receivables that Battat had collected, explaining that he would only transfer the funds when a joint escrow account was opened.
In response, Rejwan moved to enforce the terms of the settlement agreement, and Battat opposed the motion. In an order dated September 19, 2023, the Supreme Court, inter alia, granted Rejwan's motion. Battat appeals.
"'Fundamental to the establishment of a contract modification is proof of each element requisite to the formulation of a contract, including mutual assent to its terms'" (Lawrence M. Kamhi, M.D., P.C. v East Coast Pain Mgt., P.C., 177 AD3d 726, 726, quoting Beacon Term. Corp. v Chemprene, Inc., 75 AD2d 350, 354). "Modifications of written contracts may be proved circumstantially by the conduct of the parties subsequent to the agreement" (id. at 727, citing Chase v Skoy, 146 AD2d 563, 564).
Here, Battat did not establish that Rejwan breached the settlement agreement when Rejwan's counsel set up the escrow account solely in her firm's name and deposited Baby Time's funds in that escrow account. Contrary to Battat's contention, the emails between the parties, as well as the email sent by Battat's prior counsel to the insurance agent, which authorized Rejwan's counsel to collect the insurance claim proceeds and deposit the proceeds into the escrow account she held, constituted signed writings (see State Technology Law §§ 302[3]; 304[2]; Forcelli v Gelco Corp., 109 AD3d 244, 250-251; cf. Vlastakis v Mannix Family Mkt. &commat; Veteran's Rd., LLC, 220 AD3d 908). Further, the emails exchanged between Rejwan's counsel and Battat's prior counsel demonstrated the parties' mutual assent to, and intent for, a modification to that portion of the settlement agreement requiring Baby Time's funds be deposited into a joint escrow account (see Lawrence M. Kamhi, M.D., P.C. v East Coast Pain Mgt., P.C., 177 AD3d at 727; United States Fid. & Guar. Co. v Delmar Dev. Partners, LLC, 14 AD3d 836, 838; see also Forcelli v Gelco Corp., 109 AD3d at 248). The parties' modification can also be gleaned from the signed mutual agreement, which explicitly stated that "[Baby Time] expressly directs all proceeds for the above-referenced insurance claim shall be made payable to '[Baby Time] International Inc.' and will be turned over to [Rejwan's counsel], as Escrow Agent, to be held for the benefit of [Baby Time]."
Additionally, Battat was not entitled to rescind the settlement agreement based on a breach of that agreement, as Battat failed to establish by clear and convincing evidence that Rejwan ever breached the settlement agreement (see Perlbinder v Vigilant Ins. Co., 190 AD3d 985, 988; Silver v Gilbert, 7 AD3d 780, 781). Moreover, the Supreme Court properly considered the affirmation of Rejwan's counsel submitted in support of Rejwan's motion, as Rejwan's counsel had personal knowledge of the facts, and, as such, her affirmation did not amount to hearsay (see Beberman v Halbrecht, 105 AD2d 876, 877; Deiso v Mobil Oil Corp., 56 AD2d 621, 621).
Battat's remaining contentions are either improperly raised for the first time on appeal or improperly raised for the first time in reply.
BARROS, J.P., BRATHWAITE NELSON, WARHIT and MCCORMACK, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court